BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SUSAN E. BADGER (CABN 124365)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    William.frentzen@usdoj.gov
    Susan.badger@usdoj.gov
    Waqar.hasib@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.: CR 14 0196 CRB |
| v. | UNITED STATES' CONSOLIDATED OPPOSITION TO DEFENDANT CHOW'S MOTIONS TO EXCLUDE 404(b) EVIDENCE AND EVIDENCE OF HOMICIDES (Docs. 957, 958, and 959) |
| KWOK CHEUNG CHOW, et al. | |
| Defendants. | |
| | Date: September 28, 2015<br>Time: 10:30 a.m.<br>Court: Honorable Charles R. Breyer |

## I. INTRODUCTION

The United States hereby files this consolidated opposition to Defendant Chow's Motion to Exclude Reference to the Murder of Allen Leung and Jim Tat Kong (Doc. 957), Motion to Exclude Past Acts (Doc. 958), and Motion Objecting to 404(b) Notice (Doc. 959). Chow has previously stated, on the one hand, that the government somehow "created the crimes" in this case and "created an enterprise" through undercover activity and then, on the other hand, complains about and seeks to preclude the government from presenting evidence that Chow and his enterprise were engaged in other criminal activity. The Court should not cabin the evidence in a manner that permits a fraudulent defense when the Rules of Evidence provide that such evidence is admissible to prove a racketeering conspiracy, admissible as inextricably intertwined evidence, and/or admissible pursuant to Fed. R. Evid. 404(b). The government believes that the evidence at issue is obviously admissible at trial, but alternatively the Court could also reject Chow's Motions in Limine and then decide, based on the issues presented during trial, what evidence is and is not properly admissible.

## II.   LAW

1. Racketeering Enterprise Evidence

Generally speaking, evidence of crimes that demonstrate a racketeering enterprise are admissible to prove a RICO offense or a RICO conspiracy. Defendant Chow cites no law to the contrary and appears to completely ignore that the charges against him include a racketeering conspiracy. The Ninth Circuit has recognized the expansive nature of admissible evidence to prove a racketeering enterprise, whether introduced against multiple defendants or against a single defendant. *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004) (denying severance of RICO defendants on the basis that "much of the same evidence would be admissible against each of [the defendants] in separate trials"). Importantly, in *Fernandez*, the Ninth Circuit quoted the following from the case of *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992):

> Proof of [RICO] elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant, and the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless.

*Id.* at 1242.

In the case relied upon by the Ninth Circuit, *DiNome*, the court held that "we note here that the government must prove an enterprise and a pattern of racketeering activity as elements of a RICO violation." In *DiNome*, the RICO defendants claimed that they were entitled to severance, but the Second Circuit upheld the joint trial on the basis of the lack of prejudice inherent in the nature of proving a RICO case. *Id.* at 843. "[T]he evidence of numerous crimes, including the routine resort to vicious and deadly force to eliminate human obstacles, was relevant to the charges against each defendant because it tended to prove the existence and nature of the RICO enterprise . . . ." *Id.* "In some cases both the relatedness and the continuity necessary to show a RICO pattern may be proven through the nature of the RICO enterprise. . . . We do not suggest that the defendant is to be held accountable for the racketeering acts of others. We simply note that such an association may reveal the threat of continued racketeering activity and thereby help to establish that the defendant's own acts constitute a pattern within the meaning of RICO." *Id.* (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383-84 (2d Cir. 1989)). "**The evidence of the [enterprise]'s various criminal activities was, therefore, relevant to the RICO charges against each appellant** . . . because it tended to prove: (i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities."[1] *Id.* (emphasis added). *United States v. Coonan*, 938 F.2d 1533, 1559 (2d Cir. 1991) ("common sense suggests that the existence of an association-in-fact is often-times more readily proven by what it does, rather than by abstract analysis of its structure"), *quoted in Fernandez*; *see also United States v. Bonanno*, 467 F.2d 14, 17 (9th Cir. 1972) ("In conspiracy prosecutions, the Government has considerable leeway in offering evidence of other offenses").

Other Circuits are in agreement regarding the broad range of evidence that is admissible to prove a racketeering case. *United States v. Matera*, 489 F.3d 115, 120-21 (2d Cir. 2007) (admission of uncharged murders committed by members of the Gambino LCN family to prove the RICO enterprise);

---

[1] In *DiNome*, the court did find that two defendants should have had certain counts severed, but that was as a result of the trial court granting a Rule 29 motion for judgment of acquittal at the conclusion of the government's case on the RICO count. Those two defendants are, therefore, irrelevant to this issue.

*United States v. Baez*, 349 F.3d 90, 93-94 (2d Cir. 2003) (admitting evidence of sixteen uncharged robberies to establish the alleged enterprise and conspiracy); *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (admission of evidence that members of the Latin Kings street gang committed uncharged drug trafficking and crimes of violence on behalf of the Latin Kings "to prove the existence, organization and nature of the RICO enterprise, and a pattern of racketeering activity"); *United States v. Richardson*, 167 F.3d 621, 625-26 (D.C. Cir. 1999) (continuity may be established by the totality of all of the co-defendants' unlawful conduct); *United States v. Keltner*, 147 F.3d 662, 667-68 (8th Cir. 1998) (uncharged criminal conduct by coconspirator admissible to prove the enterprise); *United States v. Salerno*, 108 F.3d 730, 738-39 (7th Cir. 1997) (uncharged extortionate collections by defendants admissible to prove the enterprise); *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (admission of evidence of uncharged murders committed by some defendants and other enterprise members to show the existence of the enterprise and acts in furtherance of the conspiracy); *United States v. Krout*, 66 F.3d 1420, 1425 (5th Cir. 1995) (admission of uncharged murders committed by the defendants was not prejudicial when admitted to establish that murder and violence were part of the enterprise's objectives and manner and means); *United States v. DiSalvo*, 34 F.3d 1204 (3rd Cir. 1994) (upholding admission of defendant's uncharged acts to establish the existence of the the enterprise and the defendants' participation in and knowledge of the enterprise); *United States v. Gonzalez*, 921 F.2d 1530, 1545-47 (11th Cir. 1991) (uncharged crimes by defendant and other conspirators admissible to prove the enterprise and continuity) (collecting cases).

Interestingly, in *DiNome*, the Second Circuit also went on to state that: "[p]resumably, a RICO defendant could stipulate that the charged RICO enterprise existed and that the predicate acts, if proven, constituted the requisite pattern of racketeering activity. The evidence of crimes by others might then be excluded, and the defense would stand or fall on the proof concerning the predicate acts charged aginst the particular defendant." *DiNome*, at 844. If defendant Chow does not want evidence presented of the overall enterprise, he could stipulate as provided for above, and the government would simply set out to prove his participation and involvement in the racketeering conspiracy.

If defendant Chow will not stipulate to the racketeering enterprise, then most of the evidence the government included on its list will be admissible as enterprise evidence, properly admissible to prove

USA OPP. TO CHOW'S MOTS. IN LIMINE
CR 14-0196 CRB                                               3

the racketeering enterprise.

### 2. Inextricably Intertwined Evidence

In the event that some evidence is deemed not to prove the enterprise, it likely will be admissible as evidence that is intrinsic or inextricably intertwined with the charges in the Second Superseding Indictment. Such evidence is not character evidence, it is admissible to prove the charges themselves. "Evidence of prior bad acts may be admitted 'for the purpose of providing the context in which the charged crime occurred.' Evidence of other acts that is 'inextricably intertwined' with the underlying offense is admissible under Fed. R. Evid. 404(b). Evidence is 'inextricably intertwined' if it 'constitutes a part of the transaction that serves as a basis for the criminal charge,' or 'was necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" *United States v. Rrapi*, 175 F.3d 742, 748-49 (9th Cir. 1999) (quoting *United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996); *United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994); *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995)).

### 3. 404(b) Evidence

Finally, if evidence of prior bad acts is not admissible as enterprise proof or as intrinsic to the charges, it can be admitted pursuant to Fed. R. Evid. 404(b). That Rule provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Importantly, and often ignored or overlooked by the courts and defendants, including defendant Chow in his Motion, "Rule 404(b) **is a rule of inclusion**. . . . Unless the evidence of other crimes tends only to prove propensity, it is admissible." *United States v. Jackson*, 84 F.3d 1154, 1158-59 (9th Cir. 1996) (emphasis added); *see also, United States v. Major*, 676 F.3d 803, 808 (9th Cir. 2012) ("Once it has been established that the evidence offered serves one of the purposes authorized by Rule 404(b)(2), the only conditions justifying the exclusion of the evidence are those described in Rule 403") (quoting *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc)). Furthermore, where evidence of

uncharged bad acts is inextricably intertwined with the evidence of the charged crimes, it is not evidence subject to Fed. R. Evid. 404(b) at all. Therefore, if evidence of prior acts tends to prove a relevant fact other than character it is admissible unless it is excluded under Rule 403.

### III. ARGUMENT

**1. The Murders of Allen Leung and Jim Tat Kong Constitute Both Enterprise Proof and Inextricably Intertwined Evidence and Are, Therefore, Admissible**

The rise of defendant Chow to the position of the Dragonhead was initiated by the murder of Allen Leung. Defendant Chow's Motion contains a lengthy rewrite of history devoid of any citation to authority regarding the murder of Allen Leung and Chow's role before, during, or after that murder. In a brief recitation of the information regarding this homicide, Mr. Leung approached the FBI to report that defendant Chow was threatening him and extorting him and that he feared for his life. 302 of Allen Leung.[2] Shortly after reporting to the FBI about the threats from Chow, Mr. Leung was murdered in his place of business. During the funeral for Mr. Leung, Chow made a display by wearing a white suit and parading through Chinatown with young bodyguards from the Hop Sing Tong and elsewhere walking on both sides of him. This was a clear sign of his intention to rise to power and of disrespect to Mr. Leung and to his family. In reference to Mr. Leung's murder, Chow has previously stated "that motherfucker had it coming." Shortly after the funeral of Mr. Leung, Chow attended a ceremony in his own honor and assumed the position of Dragonhead of the Chee Kung Tong.[3] Chow continued to be a member of the Hop Sing Tong and to play a role with respect to the leadership of the Hop Sing Tong.

The history of the enterprise alleged in the case and the rise of Chow to take over the Chee Kung Tong and to assume a position of greater influence with the Hop Sing Tong following his lengthy incarceration cannot be understood without this foundation. This evidence is essential to the nature of

---

[2] The government is making references to FBI 302s for ease of reference. Recordings of conversations with UCE 4599 can be provided to the Court directly if the Court has any questions regarding the accuracy of the FBI 302s that reflect recorded conversations.

[3] Chow's Motion assumes that the investigation has concluded and that no one has pointed the finger at Chow for the murder. Those statements are not accurate.

the enterprise that Chow set out to build.  While the Chee Kung Tong had existed for a long time, Chow was taking power immediately after the violent death of Mr. Leung and making a show of power through muscle.  Chow did not obtain power through impressive legitimate achievements as some prior leaders have done, he rose to power immediately following the murder of a person who was publicly at odds with Chow, perpetrated by someone, and his immediate public acts to intimidate those who might oppose him.  This is classic enterprise evidence, and it allows the jurors to understand the ascendency of Chow within the enterprise.  Assuming that the government does not have a witness to tie Chow to the murder itself by the time of trial, the government would be willing to consider a curative instruction proposed by Chow.

The murder of Jim Tat Kong and another individual is absolutely integral to this case. Throughout the undercover investigation, defendant Chow and other members of the enterprise indicated that defendant Chow had taken issue with Jim Tat Kong because of Mr. Kong's activities at the Hop Sing Tong.  Chow and his co-conspirators stated clearly that Chow had removed his protection from Jim Tat Kong and that meant that Mr. Kong could be killed without fear of retaliation.  Effectively, in gang and organized crime lexicon, Chow "greenlighted" Jim Tat Kong.  A "greenlight" is a well-known term that indicates that a person should be, or can be, killed.  It should be noted that for years Mr. Kong and Chow were well-known associates and that they only had a falling out during the course of this investigation.[4]  Certainly, this evidence is relevant to the nature of the enterprise in this case. Members of the Moose Lodge or the local rotary club or legitimate Tongs who are kicked out presumably are not, thereby, cleared for killing by anyone who might seek to harm the individual.  Such conversations likely do not even take place.  That Chow was aware and proud of the fact that his banishment of Mr. Kong would lead to his murder indicates the true nature of the enterprise run by

---

[4] Chow claims that the government had not investigated Mr. Kong. That is false. Mr. Kong was the subject of prior investigations. Chow claims that he should be entitled to any such investigation as *Brady*. Chow provides no basis for his claim. That Mr. Kong was previously investigated is not exculpatory as to Chow, and he provides no basis on which the government would disclose its investigations of other individuals.

USA OPP. TO CHOW'S MOTS. IN LIMINE
CR 14-0196 CRB                                         6

Chow and his associates.

While Chow repeatedly denied that he overtly requested that Jim Tat Kong be killed, he repeatedly stated that he had removed his protection and that someone would, therefore, kill Mr. Kong. See, e.g., FBI 302 of meeting on November 17, 2011. Chow stated explicitly that Mr. Kong was trying to take over the Hop Sing Tong, that Mr. Kong was intimidating the elders, and that Mr. Kong had confronted Chow directly over the leadership of the Hop Sing Tong. *Id.* Chow made these statements himself during the course of the investigation repeatedly. Furthermore, San Francisco Police Department officers were present to witness portions of the confrontation between Chow and Mr. Tong and they included their observations in memoranda and reports. Chow's co-defendants stated to UCE 4599 that they were armed during that confrontation because they and Chow expected that there could be violence between themselves and Mr. Kong and his followers. FBI 302 of meeting, November 17, 2011. They stated that they, defendants Nieh, Chanthavong, and Pau were there and at least some of them were armed, that Mr. Kong and some of his followers were armed – and that Mr. Kong was wearing a bullet proof vest. Id. Again, this is not a description of a leadership dispute regarding a typical, legitimate, civic organization. This type of evidence goes right to the core of the RICO conspiracy alleged against defendant Chow and others.

Furthermore, when Mr. Kong was eventually murdered in Mendocino County, Chow gloated about that murder to UCE 4599 and laughed about it. FBI 302 of October 30, 2013; 1D346 (00:26:00-00:36:00). According to Chow, when he heard that Mr. Kong was murdered he stated his reaction was "wow, that was really cool" and that Mr. Kong had it coming. *Id.* While Chow speculated that the actual murderers might have been Vietnamese gangsters, Chow also stated "definitely, **I** got to have somebody to take **my** revenge." *Id.*; 1D346 (00:31:58). It is irrefutable that Chow "greenlighted" Mr. Kong by removing the "protection" of himself and his organization from his prior ally. Furthermore, the government expects that by the time of trial there will be witnesses to testify that Chow requested

certain individuals to murder Mr. Kong. Defendant Li already told UCE 4599, during his first meeting with the undercover agent, that he had been brought back from Los Angeles to San Fransisco to eliminate Mr. Kong and to squash the bugs. While the double murder of Mr. Kong and the other individual remain unsolved, the government will present irrefutable evidence that Chow greenlighted Mr. Kong and that he requested individuals to murder Mr. Kong.

These incidents, therefore, constitute enterprise proof and are inextricably intertwined with the charges in the Second Superseding Indictment against Chow. They explain his rise to authority in the Tong and the power he believes that he possesses in terms of his enterprise and his ability to protect or not protect those he wishes. This is classic RICO evidence and should be admitted during trial.[5]

**2. Chow's Prior Crimes Are Admissible During Trial**

Chow has an extensive and horrible criminal record. He was convicted of racketeering in violation of 18 U.S.C. § 1962(c) in Federal Court previously and his sentencing occurred on June 3, 2002, after Chow cooperated with the government and testified against co-defendants at trial. That racketeering included admissions to racketeering conduct such as: Murder for Hire, in violation of 18 U.S.C. § 1958; Conspiracy to Distribute Heroin, in violation of 21 U.S.C. § 846; Arson, in violation of Cal. Penal Code, Section 451; and Conspiracy to Use Extortion to Collect Extensions of Credit, in violation of 18 U.S.C. § 894. Chow was also convicted following jury trial of the following crimes in connection with the same case: Conspiracy to Traffic Firearms, 18 U.S.C. § 371; Dealin in Firearms without a License, in violation of 18 U.S.C. § 922(a)(1)(A); Unlicensed Delivery of Firearms, in violation of 18 U.S.C. § 922(a)(5); Interstate Transportation of Firearms, in violation of 18 U.S.C. § 922(a)(3); Interstate Transportation of Firearms with Intent to Commit a Felony, in violation of 18

---

[5] The matters above were also included in the government's Bill of Particulars as to Count One for defendant Chow and others. Doc. 635. The government's notice of bill of particulars referenced the Pascua Affidavit in Support of Search Warrants, which referred to the murder of Allen Leung, (Pascua Affidavit at 8, 34) as well as the conflict with Mr. Kong, (Pascua Affidavit at 64, 227). The government's notice incorporated the discovery in the case and indicated that those were enumerated overt acts, but not exhaustive. *Id.* at 4. It also invited any counsel, consistent with the Court's invitation, to move for further particularization if necessary. *Id.* at 1. No counsel moved for additional particularization.

U.S.C. § 924(b); and Shipping Firearm After Felony Conviction, in violation of 18 U.S.C. § 922(g)(1). Prior to those offenses, the defendant was convicted of violent state offenses. At age 18, on July 10, 1978, the defendant was convicted of 17 counts of Robbery with Use of a Firearm, after the defendant and two others robbed 23 people during a meeting. On July 31, 1986, the defendant was convicted of Assault with a Firearm for shooting a rival gang member inside of the Golden Key Restaurant.

While these prior convictions are not ordinarily admissible to prove a person's character, they may well be admissible against Chow. The government requests that the Court not foreclose these prior convictions and consider their admissibility during trial for several reasons.

First, Chow's prior convictions are inextricably intertwined with Chow's role in the enterprise and his rise in the Hop Sing Tong and the Chee Kung Tong. One cannot understand how Chow is able to assume a position in these organizations without his prior criminal activity. Chow did not rise to prominence as a business leader, as a civic leader, as a political leader, as a successful teacher, or through any other acievements. Chow was a lifelong thug who engaged in violence, intimidation, and criminal activity for his entire life, except when he was in prison. While the defendant will argue this is character evidence, it is not. It explains how and why Chow would ascend to the Dragonhead position. It explains how and why Chow could assume a position where he did not have to get his hands dirty committing crimes and could insulate himself – although he did it poorly in the end – from the crimes being committed around him. The jury will not understand how and why people like defendants Nieh, Yun, Pau, Chanthavong, Li, Mei, and others considered Chow to be a leader without understanding his history. It would appear that Chow himself wants to engage the jury in some understanding of his history. A theme of redemption and reform does not make sense without an understanding of prior criminal activities. If Chow is going to argue in his opening statement that he is a reformed and rehabilitated individual then there is no reason why the jurors should not understand the nature of Chow's prior offenses.

Second, Chow's prior convictions – and how they came about – are inextricably intertwined with Chow's knowledge and techniques to avoid implicating himself while participating in criminal activity. As noted above, Chow tried to put himself in a position to be insulated through others from any criminal conduct with UCE 4599. Chow discussed those efforts throughout the case. From instructing

intermediaries like defendants Nieh and Yun and UCE 4599 not to discuss the actual crimes being committed to actively discussing not talking about criminal activity over the phone, Chow tried to set up defenses for himself at this trial.  The jury should be permitted to understand that Chow's techniques were taught to him by his prior Dai Los.  Chow openly discussed those techniques in prior 302s, in his book "Sun of the Underworld," in conversations with UCE 4599 and with his co-defendants, and in his prior trial testimony when he was a witness for the government.  The jury will be permitted to hear from Chow's own mouth the techniques for evading law enforcement that he learned and employed and those techniques are difficult to understand without understanding what Chow previously did.

Third, Chow's prior racketeering activities will become admissible if Chow claims entrapment in order to demonstrate predisposition.  This is academic.

Fourth, Chow's prior crimes will become admissible to rebut any offers by Chow to demonstrate his "good character" if the Court permits such evidence as a pertinent trait.  As discussed in the government's motion in limine to prevent evidence of "good character," if the Court were to permit such evidence then the government is permitted, by Rule 404(a)(2) to rebut evidence of good character presented by the defendant.  If Chow intends to offer evidence of positive community acts, then the jury is allowed to understand the full picture of Chow's character.  Fed. R. Evid. 404(a)(2).

Fifth, pursuant to Fed. R. Evid. 404(b) Chow's prior crimes are admissible to show Chow's knowledge, intent, and lack of mistake or accident.  The Court should consider those bases for admission during the course of the trial and withhold ruling until during the course of trial.  For example, Chow has spoken at length about his abilities, due to his prolific criminal background, to perceive what type of criminal activity another individual pursues almost immediately upon meeting him or her.  *Sun of the Underworld*.  It would defy logic, then, that Chow would not understand what sort of criminality UCE 4599 was engaged in with Chow's co-defendants.  This case will boil down to one of two defenses. Either Chow will claim entrapment or Chow will claim a lack of knowledge and intent.  Chow cannot deny that he introduced UCE 4599 to his "inner circle" and to other individuals who Chow knew were involved in criminal activity.  The government believes that, clearly, based on the evidence, Chow knew and understood that UCE 4599 and those other individuals were committing crimes and that Chow attempted to be willfully ignorant about those crimes.  Chow's extensive criminal

past – involving almost all manner of racketeering possible – and his self-proclaimed ability therefrom to perceive the "hustle" of any other criminal are relevant and admissible not to prove character but to prove Chow's knowledge of the crimes being committed all around him – and from which he profited – as well as his intent that the crimes continue. If Chow really did not want himself or the members of his organization involved in criminal activity with UCE 4599, Chow easily could have told UCE 4599 to get lost. Chow could have called the police. Chow was prolific in providing useless and bad information to law enforcement as if he was still a cooperating informant of some variety, but he never reported the criminal activities of UCE 4599 or his co-defendants to law enforcement. This demonstrated his intent that the criminal activity that was profiting him, his associates, and his enterprise persist and continue. This is not "bad character" evidence, it is highly relevant evidence to the true knowledge, intent, motive, and plan of Chow and it should be admitted.

Sixth, if Chow were to testify then these prior convictions should be admitted as impeachment of Chow. If Chow were to testify that he did not know what the people around him were doing, then his prior criminal activities would be necessary to show that Chow was not being truthful. They would also be admissible to impeach Chow pursuant to Fed. R. Evid. 609.

### 3. The Government's Notice of 404(b) Was Adequate and Sufficient

Defendant Chow's Motion that the government's 404(b) notice is inadequate misunderstands the Rule. The Rule requires that the government provide notice of prior bad acts that the government intends to offer at trial. Defendant Chow extrapolates from cases that held that the government must make certain evidentiary showings for admission of the evidence at trial to argue that the government must include all of that information in the pretrial notice. There is no legal support for that argument and it should be ignored.

The government provided notice of potential "other acts" evidence without waiving any arguments that the acts were part of the charges in the case and/or evidence that was intrinsic to the charges in the case and, therefore, not governed by Fed. R. Evid. 404(b). Out of an abundance of caution – in the event that the Court might not agree that some of these other acts were intrinsic or

USA OPP. TO CHOW'S MOTS. IN LIMINE
CR 14-0196 CRB                                               11

enterprise proof – the government noticed each of the acts as 404(b) as well.  The government provided brief statements of criminal activities to put defendants on notice of the scope of the government's case in the event that they might argue that any of it is governed by Rule 404(b).  That is the only notice – together with the abundant discovery provided by the government – that is required under the Rule.  The cases cited by Chow each address the evidentiary hurdles for the admission of Rule 404(b) evidence **during trial**.  Not one of the cases directly address the notice that is required.  The government has provided notice, the notice was adequate, the government will provide a sufficient evidentiary basis for the admission of the acts during trial if necessary, and defendant Chow's motion should be denied.

## IV.     CONCLUSION

In light of the foregoing, the government hereby respectfully submits that the Court should deny defendant Chow's Motions *in Limine* and allow admission of the evidence described above during trial. In the alternative, the government respectfully requests that the Court reserve ruling until during trial.

DATED: September 18, 2015               Respectfully submitted,

                                        MELINDA HAAG
                                        United States Attorney

                                         _____/s/_____
                                        SUSAN E. BADGER
                                        WILLIAM FRENTZEN
                                        S. WAQAR HASIB
                                        Assistant United States Attorneys