# EXHIBIT 23

# (To be filed under seal)

Government's Exhibit

1   MELINDA HAAG (CABN 132612)
2   United States Attorney

3   MIRANDA KANE (CABN 150630)
    Chief, Criminal Division
4

5   WILLIAM FRENTZEN (LABN 24421)
    SUSAN BADGER (CABN 124365)
6   S. WAQAR HASIB (CABN 234818)
    Assistant United States Attorneys
7   450 Golden Gate Ave., Box 36055
    San Francisco, California 94102
8   Telephone:  (415) 436-7200
    Fax: (415) 436-6753
9   E-Mail:      william.frentzen@usdoj.gov
                 susan.badger@usdoj.gov
10               waqar.hasib@usdoj.gov

11  Attorneys for United States

12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15               SAN FRANCISCO DIVISION

16                                      No.

17  IN THE MATTER OF THE            )   UNITED STATES' INSTRUCTIONS
    APPLICATION OF THE UNITED       )
18  STATES FOR AN ORDER             )
    AUTHORIZING THE INTERCEPTION    )   FILED UNDER SEAL
19  OF WIRE AND ELECTRONIC          )
    COMMUNICATIONS ON CELLULAR      )
20  TELEPHONES ██████████           )
    ██████, AND ██████ AND          )
21  THE OBTAINING OF GPS PRECISE    )
    LOCATION INFORMATION FOR        )
22  THE SAME TELEPHONES, AND        )
    INTERCEPTION OF WIRE            )
23  COMMUNICATIONS ON               )
    TELEPHONES ██████████ AND       )
24  ██████████                      )
                                    )
25

26

27

28

INSTRUCTIONS
UNDER SEAL

1    <u>**TO ALL SPECIAL AGENTS,**</u> law enforcement officers, and other personnel under the

2    supervision of law enforcement personnel who are participating in the monitoring of the

3    conversations involving the interception of wire and electronic communications over the

4    following telephones (hereafter the "**Target Telephones**"):

5    **Target Telephone 1**
     Suspected Primary User: Keith JACKSON

6    Call Number: ▢
     IMSI/IMEI: ▢

7    Provider: T-Mobile
     Subscriber: ▢

8    ▢

9    San Francisco, CA 94109

10

11   **Target Telephone 2**

12   Suspected Primary User: Senator Leland YEE
     Call Number ▢

13   MEI: ▢
     Provider: Verizon

14   Subscriber: ▢

15   San Francisco, CA 94121

16   **Target Telephone 3**

17   Suspected Primary User: Leland Yee
     Call Number: (415) 504-8728

18   Provider: AT&T
     Subscriber: ▢

19   Located at: ▢
     San Francisco, CA 94122

20

21   **Target Telephone 4**

22   Suspected Primary User: Leland Yee
     Call Number: ▢

23   Provider: AT&T
     Subscriber: ▢

24   Located at: ▢
     San Francisco, CA 94122

25

26   **Target Telephone 5**
     Suspected Primary User: ▢

27   Call Number: ▢
     IMSI/IMEI: ▢

28   Provider: Verizon Wireless

INSTRUCTIONS
<u>UNDER SEAL</u>

The anticipated authorization for interception is for certain wire and electronic communications over **Target Telephones 1 and 2** and for certain wire communications over **Target Telephones 3 and 4**, involving the following persons:

Keith JACKSON ("JACKSON"), ███████████████, California State Senator Leland YEE ("YEE"), ████████████████████████████, Brandon JACKSON ("Brandon JACKSON"), Marlon SULLIVAN ("SULLIVAN"), Kwok Cheung CHOW, a/k/a Raymond Chow, a/k/a Shrimp Boy, a/k/a Ha Jai ("CHOW"), ██████████████

Barry HOUSE, a/k/a Black ("HOUSE"), and ████████████████; and others whose identities are presently unknown, and for certain wire and electronic communications over **Target Telephone 5** involving the following persons:

Keith JACKSON ("JACKSON"), ████████████████, Brandon JACKSON ("Brandon JACKSON"), Marlon SULLIVAN ("SULLIVAN"), ██████████████, and Barry HOUSE, a/k/a "Black" ("HOUSE");

and others whose identities are presently unknown (collectively, the "Target Interceptees"), for a thirty (30) day period, pursuant to 18 U.S.C. § 2518.

## INTRODUCTION

1.   Before participating in any interception, you must

a.   attend the minimization meeting on April 1, 2013, or listen to the recording of the instructions given at that meeting,

b.   carefully read the Application, Affidavit, and Court Order that are expected to be signed by the Court on April 2, 2013, authorizing the interception of wire communications;

c.   carefully read these Instructions; and

d.   after completing the above steps (a-c), **but before you begin monitoring**, sign the attached certification.

A copy of the signed Application, Affidavit, Order, and Instructions will be posted in the wire room at all times during the operation of the surveillance.  No one should be in the wire room without completing this certification.  Moreover, only individuals involved in this wiretap should be listening to conversations taking place over the **Target Telephones** as they are being monitored.  Finally, information received from this wiretap should not be disclosed to anyone outside of this investigation.

2.   Your task is to carry out the Court's Order, intercepting only those conversations and activities that are specifically designated, while minimizing the interception of non-pertinent or privileged communications and activities.

3.   The law makes no distinction between intercepting, listening to, overhearing, or monitoring  (hereinafter "intercepting") a conversation.  Courts generally regard intercepting wire and electronic communications through the use of electronic surveillance like any other search warrant: it authorizes a limited search and a limited seizure of evidence.  Any intercepted conversation, whether or not it is recorded or otherwise preserved, is "seized" and subject to the limitations of the Court's Order.

4.   The Court's Order will not allow you to freely intercept and listen to every communication carried on over the **Target Telephones**.  Minimization requires that the agents make a good faith determination of whether any conversation is relevant to those illegal activities described below.  If you listened to every conversation occurring over the **Target**

INSTRUCTIONS
UNDER SEAL

1   Telephones, the fruits of your investigation could be suppressed unless all the conversations

2   were pertinent and were not privileged.

3       5.   Anytime a conversation or any part thereof is monitored, it must be recorded.  To ensure

4   that the Court can later review exactly what was intercepted, where and when minimization took

5   place, and whether or not the monitoring was conducted in accordance with its Order, the

6   interception equipment has been wired in such a way as to interconnect the recording and

7   monitoring functions. You will not be able to monitor any communication without it being

8   automatically and simultaneously recorded.  Conversely, you will not be able to record any

9   communication without it being automatically and simultaneously monitored.  A single switch

10  will activate both interception and recording so that when you tie into a telephone line to monitor

11  a communication, you will have also activated the recorder.  When you shut off the switch to end

12  your interception, the recording will cease at the same time.  If for some reason we must use

13  machines that have a separate monitor switch, such switch is not to be activated unless the

14  machine is recording.

15      6.   We have to be able to demonstrate that we neither listened to nor recorded

16  communications that we had no right to intercept.  The original recording is our evidence of this.

17  For this reason, **no machine is to be left unattended or on automatic**.

18      7.   However, if at any time a machine malfunctions or it becomes necessary to install

19  another CD while conversations are being intercepted, monitoring is permissible while the

20  situation is being remedied.  Be certain to report any overheard or overseen but non-recorded

21  conversations in the interception log as accurately as possible, and to note the time, duration, and

22  nature of the malfunction or other reason for non-recording.  Also, immediately inform the

23  Supervising Agent and the Supervising Attorney about the situation.  In this case, your notes will

24  serve the function of the recording and must be carefully preserved.

25      **COMMUNICATIONS WHICH MAY BE MONITORED**

26      8.   We have obtained authority from the Court to intercept certain wire and electronic

27  communications of the Target Interceptees which occur over the **Target Telephones**.  The

28

communications we are authorized to intercept are those that relate to the following offenses for **Target Telephones 1 through 4:**

(a) mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343, and 1346;

(b) money laundering, in violation of Title 18, United States Code, Section 1956;

(c) violations of the Travel Act, in violation of Title 18, United States Code, Section 1952;

(d) conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846;

(e) distribution of controlled substances, in violation of Title 21, United States Code, Section 841;

(f) use of communication facility to commit or facilitate narcotics offense, in violation of Title 21, United States Code, Section 843(b);

(g) unlawful engaging in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1); and

(h) interstate transportation of stolen property, in violation of Title 18, United States Code, Section 2314;

and for **Target Telephone 5:**

(a)  mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343, and 1346;

(b) money laundering, in violation of Title 18, United States Code, Section 1956;

(c) violations of the Travel Act, in violation of Title 18, United States Code, Section 1952;

(d) conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846;

(e) distribution of controlled substances, in violation of Title 21, United States Code, Section 841; and

(f) use of communication facility to commit or facilitate narcotics offense, in violation of Title 21, United States Code, Section 843(b);

1   (hereinafter collectively referred to as the "Target Offenses").

2       We are permitted by the Court's Order to intercept these wire and electronic communications

3   to achieve the goals of this investigation. These goals are as follows, to identify:

4           (i) the nature, extent and methods of operation of all of the Target Subjects' scheme to
            commit the Target Offenses;

5
6           (ii) the identity of all of the Target Subjects' accomplices, aiders and abettors,
            co-conspirators and participants in their commission of the Target Offenses;

7           (iii) the receipt and distribution of all contraband and money involved in the Target
            Offenses;

8
9           (iv) the locations and items used in furtherance of the Target Offenses;

            (v) the existence and locations of all records relating to the Target Offenses;

10
11          (vi) the location and source of all resources used to finance the Target Offenses; and

12          (vii) the location and disposition of all of the proceeds from the Target Offenses.

        9. You should listen to the beginning of each conversation for as long as, and only
13
for as long as, it is necessary for you to determine if one of the persons named above is a
14
participant and the conversation is pertinent to the subjects and activities targeted by the Court
15
Order, but in any case, usually no longer than a few minutes unless the conversation is pertinent,
16
that is, the conversation is within the scope of our authorization and not privileged. Title 18,
17
United States Code, Section 2518(5) requires that interception be done "in such a way as to
18
minimize the interception of communications not otherwise subject to interception." If you
19
determine that the conversation is not a criminal conversation, or is privileged, stop monitoring
20
and begin minimization. If you determine that the communication is pertinent, you will continue
21
the interception.
22

23                        **MINIMIZATION / SPOT-MONITORING**
24

25      10. If you determine during the initial few minutes that a conversation does not fall within
26   the categories specified in the Order, that is, it is not pertinent, or that the conversation falls
27   within one of the privileges discussed below, the recording and listening devices must be turned
28   off.

INSTRUCTIONS
UNDER SEAL

11. However, it is possible that some time after the machine is turned off, the conversation will regard the illegal activities listed herein, or that the conversation will cease being of a privileged nature.  To guard against missing a pertinent conversation, spot monitor, that is, check by activating the monitor and record switch periodically to determine if the nature of the conversation has changed so that it has become pertinent.  Listen, observe, and record for a brief period, only as long as is necessary to determine whether the conversation has become pertinent. This procedure of spot-monitoring may be continued throughout the conversation, but should be kept to the minimum necessary to ascertain whether the conversation has changed.  If, during this brief period of spot-monitoring a pertinent conversation is intercepted, keep listening and recording.  If a non-pertinent or privileged conversation is intercepted, turn off the machine. You must record the conversations which are overheard even during the brief periods of interception that occur during the spot monitoring.

12. Continue the spot monitoring as the circumstances dictate.  In determining whether and when to continue spot interceptions, use your best judgment and the circumstances known to you, such as the identity of the parties to the conversation, the nature of their relationship and past conduct, the presence of any code words, their known current activity, etc.  Here are some guidelines to help you do this. ·

    a.    Patterns of Innocence:
If after several days of interception, we have consistently found that communications involving a Target Interceptee and a particular person are innocent, non-pertinent, or non-crime related, then a pattern of innocence exists and such conversations should be minimized once the parties are identified but such conversations should also occasionally be spot-monitored as described above.

    b.    Patterns of Involvement:
On the other hand, if one or more of the parties to a conversation has been, through the course of the investigation, identified as a co-conspirator, accomplice, agent, or victim of the Target Interceptees or criminal activities, and the communication is not privileged, a pattern of involvement in the illegal activity is established.  Once the pattern of involvement has been set, you should let the

supervising agent or attorney know, and have them review the need for minimization when the involved party has been identified as a participant to any conversation.

With respect to electronic communications in particular (i.e. text messages), all monitoring of electronic communications will be conducted in accordance with Chapter 119 of Title 18, United States Code. Each text message will be reviewed over a secure system, and based on the identities of the sender and recipient and the content of the message, monitoring personnel will determine as soon as practicable after interception whether the text message appears to be relevant to the investigation or otherwise criminal in nature. If the message is not criminal in nature, the message will be marked "minimized" and not accessed by other members of the investigative team. If the message appears to be privileged, it will be marked "privileged" and secured from access by other members of the investigative team. If a text message appears to be relevant to the investigation or otherwise criminal in nature, it will be marked "non-minimized" and may be shared with the other agents and monitors involved in the investigation. If a text message is marked "minimized" or "privileged," it will not be disseminated to members of the investigative team. All intercepted text messages will be sealed with the court upon the expiration of the court's order authorizing the interception. It is anticipated that the monitoring location will not be staffed at all times, but will be staffed at regular hours, at which time intercepted communications will be monitored and read (including those intercepted at hours when the location was not staffed). However, even when unmanned, the monitoring location will be kept secured with access limited to only authorized monitoring personnel and their supervising agents.

## COMMUNICATIONS IN FOREIGN LANGUAGES

13. We believe that some of the communications you monitor may be in a foreign language. When communications in a foreign language are intercepted, we are under exactly the same obligation concerning minimization regardless of whether or not a particular government

INSTRUCTIONS
UNDER SEAL

1  agent speaks or understands the language being used.  If you determine that the communication

2  is in a language in which you are not fluent, immediately notify the supervising agent.

3      14. Because it appears that conversations in Cantonese may be intercepted, efforts have been

4  made to obtain Cantonese-speaking monitors to assist in the surveillance.  If a Cantonese

5  translator is reasonably unavailable to minimize communications on the spot, all such

6  conversations should be intercepted and recorded in their entirety.  These conversations must

7  then be minimized as soon as practicable by a translator.  Specific instructions are contained in

8  both the Application and the Court Order.

9                      **EVIDENCE OF OTHER CRIMES**

10      15. We do not have authorization to intercept communications concerning the commission or

11  planning of crimes other than those defined above as illegal activities.  Our authorization is

12  limited to the interception of conversations between our named Target Interceptees and co-

13  conspirators, accomplices, agents, or victims, concerning the illegal activities defined above.  In

14  the event, however, that while you are listening to a pertinent conversation or attempting to

15  determine whether a given conversation is pertinent, you intercept a conversation involving

16  another serious crime – for example, assault, robbery, homicide, or hijacking – listen to and

17  record that conversation.  It is similar to the "plain view" doctrine which applies in the execution

18  of search warrants.  If you do monitor such a conversation, notify the Supervising Agent and

19  Supervising Attorney immediately.

20              **CONVERSATIONS IN WHICH OUR NAMED**

21              **INTERCEPTEES ARE NOT PARTICIPANTS**

22      16. No interception is to be conducted unless it is determined through video surveillance,

23  physical surveillance, voice identification, or otherwise that at least one of the named Target

24  Interceptees or any of their co-conspirators, once identified, are a party to the conversation for

25  which authorization has been obtained.  We have authority to intercept pertinent conversations in

26  which our Target Interceptees are not participants because we do not know and have not

27  identified all the people who use in connection with the illegal activities.  For example, if Keith

28  JACKSON and Senator Leland YEE are overheard stating that a third person paying a bribe will

INSTRUCTIONS
UNDER SEAL

1  be calling over a **Target Telephone** in a moment, and they plan to hand the **Target Telphone** to

2  a new individual who will assist in funneling the bribe to Senator YEE's accounts, and then the

3  two new individuals begin a conversation over the **Target Telephone** while JACKSON and

4  Senator YEE no longer participate in the conversation, you are authorized to continue to monitor

5  the conversation of the now identified co-conspirators.  However, you are to notify the

6  Supervising Agent and Supervising Attorney so that appropriate modifications can be made in

7  the applications and orders.  You must be extremely careful, however, when intercepting

8  conversations in which a named Target Interceptee is not a participant, to avoid intercepting

9  non-pertinent conversations.  It is important that you attempt to identify the named interceptees

10  of this interception and, as well, to identify other individuals who may use the **Target**

11  **Telephones** so that the patterns of innocence and involvement mentioned earlier can be

12  recognized and our monitoring may be adjusted in accordance with them.

### IDENTIFICATION OF NEW SUBJECTS

14  17. One of our stated and authorized purposes in conducting this investigation is to identify

15  our Target Interceptees' co-conspirators, accomplices, agents or victims involved in the Target

16  Offenses.  As the surveillance progresses, it is likely that you will be able to identify new

17  subjects who function as co-conspirators, accomplices, agents, or victims in the  Target

18  Offenses.  As soon as any such individual is identified, the Supervising Agent and Supervising

19  Attorney should be notified immediately.

### PRIVILEGED COMMUNICATIONS

21  18. There are special restrictions relating to any communications which would fall under any

22  legal privilege.  The general categories of privileged communications are discussed below.  If

23  you determine that a conversation is privileged, stop intercepting immediately, but spot-monitor

24  to see if the conversation remains privileged.  If you decide that a conversation is not privileged,

25  treat it as a regular interception and apply the above minimization instructions.  If you

26  mistakenly overhear a privileged conversation, you should notify the Supervising Agent and

27  Supervising Attorney.  You should not pass on the content of the conversation, only pass on the

28  circumstances of the mistaken interception.

a.  <u>Attorney-Client</u>

It is unknown at this time whether any of the subjects are currently being represented by an attorney, although there has been some indication that Leland YEE and Larry REID may have sought legal advice as to matters other than those we are actively investigating. If at any time during the investigation we learn the name of any attorney retained by any possible subject, these names are to be posted in a conspicuous place in the listening post. Any time that it is determined that an attorney is participating in an intercepted conversation over the **Target Telephones**, call the Supervising Agent and Supervising Attorney immediately.  If the conversation involves legal consultation of any kind or any sort of discussion of legal strategy, immediately turn off the monitor and stop recording. However, do not summarize this conversation in the log and, again, you should only pass on the circumstances of the mistaken interception, not the content of the conversation. Rather, you should write the content of what you mistakenly overheard, not in the log, but on a separate piece of paper titled "Attorney Communication," and give this paper, in a sealed envelope, to the Supervising Agent who, in turn, is to give it to the Supervising Attorney.

b.  <u>Parishioner-Clergyman</u>

All communications between a parishioner and his or her clergyman are to be considered privileged.  We could not obtain an interception order to listen to a person confessing to a priest in a confessional booth; similarly, we must not intercept a subject discuss his or her personal, financial, or legal problems with his or her priest, minister, rabbi, <u>etc</u>. Thus, if such a communication is intercepted over the **Target Telephones**, turn off the monitor and stop recording. Then call the supervising agent and attorney. However unlikely, if the conversation reasonably leads you to conclude that the clergyman is acting as a co-conspirator or accomplice, the conversation is not privileged and may be monitored in full.

c.   Husband-Wife

There is also a privilege concerning communications between spouses.  You are to discontinue monitoring if you determine that you are intercepting a personal communication over the **Target Telephones** solely between a husband and wife.  If it appears that a third person is present during the communication, however, the communication is not privileged.  Also, if the communication does not deal with private matters between a husband and wife, but instead with ongoing (as opposed to past) violations of law, it is not a privileged communication.

d.   Physician-Patient

Conversations between a physician and patient are to be considered privileged.
You are to stop intercepting a communication once you determine that it is a communication between a physician and patient that arises out of their professional relationship.  Then notify the supervising agent and attorney.  Again, if you decide that the doctor is acting as a co-conspirator, or accomplice, the conversation is to be treated like any other intercepted communication.

e.   Psychiatrist-Patient

Conversations between a physician, psychiatrist, psychotherapist, psychologist, and even a social workers functioning in that capacity,  are to be considered privileged.
You are to stop intercepting a communication once you determine that it is a communication between a psychiatrist and patient that arises out of their professional relationship.  Then notify the supervising agent and attorney.  Again, if you decide that the psychiatrist is acting as a co-conspirator, or accomplice, the conversation is to be treated like any other intercepted communication.

f.   Other Relationships

No legal privilege exists with regard to communications between a subject and his

INSTRUCTIONS
UNDER SEAL

26. The Court is expected to authorize the interception of wire communications over the **Target Telephones** for a period of 30 days. The Court's Order is expected to be signed tomorrow, April 2, 2013, as to **Target Telephones 1 through 4**, and interception is anticipated to start April 3, 2013. If interception indeed begins on April 3, 2013, then interception must end on May 3, 2013. If interception does not begin on April 3, 2013, the ending date will be recalculated. The dates for **Target Telephone 5** will be calculated in the near future and provided to you. In any event, no communications should be intercepted after the 30 day period without a renewal and extension of the Court's Order.

## QUESTIONS

27. If anything appears to be developing suddenly, or if a critical question arises, please call me, AUSA William Frentzen at ▓▓▓▓▓▓ (desk) or ▓▓▓▓▓▓ (mobile). You may also call AUSA S. Waqar Hasib, at ▓▓▓▓▓▓ (desk) or ▓▓▓▓▓▓ (mobile), or AUSA Susan Badger at ▓▓▓▓▓▓ or ▓▓▓▓▓▓ (mobile). These numbers will be posted in the wire room. Do not hesitate to call any of us at any time of the day or night.

DATED: April 1, 2013

MELINDA HAAG
United States Attorney

WILLIAM FRENTZEN
Assistant United States Attorney

INSTRUCTIONS
UNDER SEAL

# EXHIBIT 24

# (To be filed under seal)

Government's Exhibit

1  MELINDA HAAG (CABN 132612)
2  United States Attorney

3  MIRANDA KANE (CABN 150630)
   Chief, Criminal Division
4

5  WILLIAM FRENTZEN (LABN 24421)
   SUSAN BADGER (CABN 124365)
6  S. WAQAR HASIB (CABN 234818)
   Assistant United States Attorneys
7  450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
8  Telephone: (415) 436-7200
   Fax: (415) 436-6753
9  E-Mail:     william.frentzen@usdoj.gov
                susan.badger@usdoj.gov
10               waqar.hasib@usdoj.gov

11 Attorneys for United States

12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15               SAN FRANCISCO DIVISION

16 IN THE MATTER OF THE            )   No.
17 APPLICATION OF THE UNITED       )
   STATES FOR AN ORDER             )   UNITED STATES' INSTRUCTIONS
18 AUTHORIZING THE INTERCEPTION    )
   OF WIRE AND ELECTRONIC          )
19 COMMUNICATIONS ON ██████████    )   FILED UNDER SEAL
   ███████ WIRE COMMUNICATIONS ON  )
20 ████████████ AND WIRE AND       )
   ELECTRONIC COMMUNICATIONS       )
21 ON ██████████ AND THE           )
   OBTAINING OF GPS PRECISE        )
22 LOCATION INFORMATION FOR        )
   THE SAME TELEPHONES             )
23 _____ )

24

25

26

27

28

   INSTRUCTIONS
   UNDER SEAL

1   TO ALL SPECIAL AGENTS, law enforcement officers, and other personnel under the

2   supervision of law enforcement personnel who are participating in the monitoring of the

3   conversations involving the interception of wire and electronic communications over the

4   following telephones (hereafter the "**Target Telephones**"):

5   **Target Telephone 1**
    Suspected Primary User:  Keith JACKSON

6   Call Number:
    IMSI/IMEI:

7   Provider: T-Mobile
    Subscriber: Pamela Gilmore

10   Type of interception: wire and electronic

11   **Target Telephone 2**
    Suspected Primary User: Senator Leland YEE
    Call Number:

12   IMEI:
    Provider: Verizon

13   Subscriber:

14   Type of interception: wire only

16   **Target Telephone 5**
    Suspected Primary User:
    Call Number:

17   IMSI/IMEI:
    Provider: Verizon Wireless

18   Subscriber:

19   Type of interception: wire and electronic

21       The anticipated authorization for interception is for certain wire and electronic

22   communications over **Target Telephones 1 and 5** and for certain wire communications over

23   **Target Telephone 2**, involving the following persons: Keith JACKSON ("JACKSON"),

24                    , California State Senator Leland YEE ("YEE")

26             , Brandon JACKSON ("Brandon JACKSON"), Marlon SULLIVAN

27   ("SULLIVAN"), Kwok Cheung CHOW, a/k/a Raymond Chow, a/k/a Shrimp Boy, a/k/a Ha Jai

28   ("CHOW"),

INSTRUCTIONS
UNDER SEAL

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Barry HOUSE, a/k/a Black ("HOUSE"), ▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮ and others whose identities are presently unknown (collectively, the "Target

8  Subjects and Interceptees"), for a thirty (30) day period, pursuant to 18 U.S.C. § 2518.

9

10                          **INTRODUCTION**

11

12    1.   Before participating in any interception, you must

13         a.   attend the minimization meeting on May 8, 2013. or listen to the recording of the
              instructions given at that meeting,

14
15         b.   carefully read the Application. Affidavit, and Court Order that are expected to be
              signed by the Court on May 9, 2013, authorizing the interception of wire
16            communications;

17         c.   carefully read these Instructions; and

18         d.   after completing the above steps (a-c), **but before you begin monitoring**, sign
              the
19            attached certification.

20  A copy of the signed Application, Affidavit, Order, and Instructions will be posted in the wire

21  room at all times during the operation of the surveillance.  No one should be in the wire room

22  without completing this certification.  Moreover, only individuals involved in this wiretap should

23  be listening to conversations taking place over the **Target Telephones** as they are being

24  monitored.  Finally, information received from this wiretap should not be disclosed to anyone

25  outside of this investigation.

26    2.   Your task is to carry out the Court's Order, intercepting only those communications that

27  are specifically designated, while minimizing the interception of non-pertinent or privileged

28  communications.

INSTRUCTIONS
UNDER SEAL

3.   The law makes no distinction between intercepting, listening to, overhearing, or monitoring (hereinafter "intercepting") a conversation. Courts generally regard intercepting wire and electronic communications through the use of electronic surveillance like any other search warrant: it authorizes a limited search and a limited seizure of evidence. Any intercepted conversation, whether or not it is recorded or otherwise preserved, is "seized" and subject to the limitations of the Court's Order.

4.   The Court's Order will not allow you to freely intercept and listen to every communication carried on over the **Target Telephones**. Minimization requires that the agents make a good faith determination of whether any conversation is relevant to those illegal activities described below. If you listened to every conversation occurring over the **Target Telephones**, the fruits of your investigation could be suppressed unless all the conversations were pertinent and were not privileged.

5.   Anytime a communication or any part thereof is monitored, it must be recorded. To ensure that the Court can later review exactly what was intercepted, where and when minimization took place, and whether or not the monitoring was conducted in accordance with its Order, the interception equipment has been wired in such a way as to interconnect the recording and monitoring functions. You will not be able to monitor any communication without it being automatically and simultaneously recorded. Conversely, you will not be able to record any communication without it being automatically and simultaneously monitored. A single switch will activate both interception and recording so that when you tie into a telephone line to monitor a communication, you will have also activated the recorder. When you shut off the switch to end your interception, the recording will cease at the same time. If for some reason we must use machines that have a separate monitor switch, such switch is not to be activated unless the machine is recording.

6.   We have to be able to demonstrate that we neither listened to nor recorded communications that we had no right to intercept. The original recording is our evidence of this. For this reason, <u>no machine is to be left unattended or on automatic</u>.

1   7.   However, if at any time a machine malfunctions or it becomes necessary to install

2   another CD while conversations are being intercepted, monitoring is permissible while the

3   situation is being remedied.  Be certain to report any overheard or overseen but non-recorded

4   communications in the interception log as accurately as possible, and to note the time, duration,

5   and nature of the malfunction or other reason for non-recording.  Also, immediately inform the

6   Supervising Agent and the Supervising Attorney about the situation.  In this case, your notes will

7   serve the function of the recording and must be carefully preserved.

8   ## COMMUNICATIONS WHICH MAY BE MONITORED

9   8.   We have obtained authority from the Court to intercept certain wire and electronic

10  communications of the Target Interceptees which occur over **Target Telephones 1 and 5**, and

11  certain wire communications of the Target Interceptees which occur over **Target Telephone 2**.

12  The communications we are authorized to intercept are those that relate to the following offenses

13  for **the Target Telephones**:

14  (a)   mail fraud and wire fraud, in violation of Title 18, United States Code, Sections

15  1341, 1343, and 1346;

16  (b)   money laundering, in violation of Title 18, United States Code, Section 1956;

17  (c)   violations of the Travel Act, in violation of Title 18, United States Code, Section

18  1952;

19  (d)   conspiracy to distribute controlled substances, in violation of Title 21, United

20  States Code, Section 846;

21  (e)   distribution of controlled substances, in violation of Title 21, United States Code,

22  Section 841;

23  (f)   use of communication facility to commit or facilitate narcotics offense, in

24  violation of Title 21, United States Code, Section 843(b); and

25  (g)   unlawful engaging in the business of dealing in firearms without a license, in

26  violation of Title 18, United States Code, Section 922(a)(1); and

27

28

INSTRUCTIONS
UNDER SEAL

(h)      interstate transportation of stolen property, in violation of Title 18, United States

Code, Section 2314.

(hereinafter collectively referred to as the "Target Offenses").

We are permitted by the Court's Order to intercept these wire and electronic communications

to achieve the goals of this investigation. These goals are as follows, to identify:

(i)      the nature, extent and methods of operation of all of the Target Subjects' scheme
to commit the Target Offenses;

(ii)     the identity of all of the Target Subjects' accomplices, aiders and abettors,
co-conspirators and participants in their commission of the Target Offenses;

(iii)    the receipt and distribution of all contraband and money involved in the Target
Offenses;

(iv)     the locations and items used in furtherance of the Target Offenses;

(v)      the existence and locations of all documents, books, records and other recordings
relating to the Target Offenses;

(vi)     the location and source of all resources used to finance the Target Offenses; and

(vii)    the location and disposition of all of the proceeds from the Target Offenses.

9.   You should listen to the beginning of each conversation for as long as, and only

for as long as, it is necessary for you to determine if one of the persons named above is a

participant and the conversation is pertinent to the subjects and activities targeted by the Court

Order, but in any case, usually no longer than a few minutes unless the conversation is pertinent,

that is, the conversation is within the scope of our authorization and not privileged. Title 18,

United States Code, Section 2518(5) requires that interception be done "in such a way as to

minimize the interception of communications not otherwise subject to interception." If you

determine that the conversation is not a criminal conversation, or is privileged, stop monitoring

and begin minimization. If you determine that the communication is pertinent, you will continue

the interception.

## MINIMIZATION / SPOT-MONITORING

10. With respect to interception of wire communications, i.e., voice conversations, if you

determine during the initial few minutes that a conversation does not fall within the categories

specified in the Order, that is, it is not pertinent, or that the conversation falls within one of the

privileges discussed below, the recording and listening devices must be turned off.

11. However, it is possible that some time after the machine is turned off, the conversation will regard the illegal activities listed herein, or that the conversation will cease being of a privileged nature. To guard against missing a pertinent conversation, spot monitor, that is, check by activating the monitor and record switch periodically to determine if the nature of the conversation has changed so that it has become pertinent. Listen, observe, and record for a brief period, only as long as is necessary to determine whether the conversation has become pertinent. This procedure of spot-monitoring may be continued throughout the conversation, but should be kept to the minimum necessary to ascertain whether the conversation has changed. If, during this brief period of spot-monitoring a pertinent conversation is intercepted, keep listening and recording. If a non-pertinent or privileged conversation is intercepted, turn off the machine. You must record the conversations which are overheard even during the brief periods of interception that occur during the spot monitoring.

12. Continue the spot monitoring as the circumstances dictate. In determining whether and when to continue spot interceptions, use your best judgment and the circumstances known to you, such as the identity of the parties to the conversation, the nature of their relationship and past conduct, the presence of any code words, their known current activity, etc. Here are some guidelines to help you do this.

    a.    Patterns of Innocence:
        If after several days of interception, we have consistently found that communications involving a Target Interceptee and a particular person are innocent, non-pertinent, or non-crime related, then a pattern of innocence exists and such conversations should be minimized once the parties are identified but such conversations should also occasionally be spot-monitored as described above.

    b.    Patterns of Involvement:
        On the other hand, if one or more of the parties to a conversation has been, through the course of the investigation, identified as a co-conspirator, accomplice, agent, or victim of the Target Interceptees or criminal activities, and the communication is not privileged, a pattern of involvement in the illegal activity is established. Once the pattern of involvement has been set, you should let the

supervising agent or attorney know, and have them review the need for minimization when the involved party has been identified as a participant to any conversation.

With respect to electronic communications, i.e. text messages, all monitoring of electronic communications will be conducted in accordance with Chapter 119 of Title 18, United States Code. Each text message will be reviewed over a secure system, and based on the identities of the sender and recipient and the content of the message, monitoring personnel will determine as soon as practicable after interception whether the text message appears to be relevant to the investigation or otherwise criminal in nature. If the message is not criminal in nature, the message will be marked "minimized" and not accessed by other members of the investigative team. If the message appears to be privileged, it will be marked "privileged" and secured from access by other members of the investigative team. If a text message appears to be relevant to the investigation or otherwise criminal in nature, it will be marked "non-minimized" and may be shared with the other agents and monitors involved in the investigation. If a text message is marked "minimized" or "privileged," it will not be disseminated to members of the investigative team. All intercepted text messages will be sealed with the court upon the expiration of the court's order authorizing the interception. It is anticipated that the monitoring location will not be staffed at all times, but will be staffed at regular hours, at which time intercepted communications will be monitored and read (including those intercepted at hours when the location was not staffed). However, even when unmanned, the monitoring location will be kept secured with access limited to only authorized monitoring personnel and their supervising agents.

## COMMUNICATIONS IN FOREIGN LANGUAGES

13. We believe that some of the communications you monitor may be in a foreign language. When communications in a foreign language are intercepted, we are under exactly the same obligation concerning minimization regardless of whether or not a particular government

1   agent speaks or understands the language being used.  If you determine that the communication

2   is in a language in which you are not fluent, immediately notify the supervising agent.

3   14. Because it appears that conversations in Cantonese may be intercepted, efforts have been

4   made to obtain Cantonese-speaking monitors to assist in the surveillance.  If a Cantonese

5   translator is reasonably unavailable to minimize communications on the spot, all such

6   conversations should be intercepted and recorded in their entirety.  These conversations must

7   then be minimized as soon as practicable by a translator.  Specific instructions are contained in

8   both the Application and the Court Order.

9                              ## EVIDENCE OF OTHER CRIMES

10  15. We do not have authorization to intercept communications concerning the commission or

11  planning of crimes other than those defined above as illegal activities.  Our authorization is

12  limited to the interception of conversations between our named Target Interceptees and co-

13  conspirators, accomplices, agents, or victims, concerning the illegal activities defined above.  In

14  the event, however, that while you are listening to a pertinent conversation or attempting to

15  determine whether a given conversation is pertinent, you intercept a conversation involving

16  another serious crime -- for example, assault, robbery, homicide, or hijacking -- listen to and

17  record that conversation.  It is similar to the "plain view" doctrine which applies in the execution

18  of search warrants.  If you do monitor such a conversation, notify the Supervising Agent and

19  Supervising Attorney immediately.

20                      ## CONVERSATIONS IN WHICH OUR NAMED

21                      ## INTERCEPTEES ARE NOT PARTICIPANTS

22  16. No interception is to be conducted unless it is determined through surveillance, voice

23  identification, or otherwise that at least one of the named Target Interceptees or any of their

24  co-conspirators, once identified, are a party to the conversation for which authorization has been

25  obtained.  We have authority to intercept pertinent conversations in which our Target

26  Interceptees are not participants because we do not know and have not identified all the people

27  who use in connection with the illegal activities.  For example, if Keith JACKSON and Senator

28  Leland YEE are overheard stating that a third person paying a bribe will be calling over a Target

1   Telephone in a moment, and they plan to hand the Target Telephone to a new individual who

2   will assist in funneling the bribe to Senator YEE's accounts, and then the two new individuals

3   begin a conversation over the Target Telephone while JACKSON and Senator YEE no longer

4   participate in the conversation, you are authorized to continue to monitor the conversation of the

5   now identified co-conspirators. However, you are to notify the Supervising Agent and

6   Supervising Attorney so that appropriate modifications can be made in the applications and

7   orders. You must be extremely careful, however, when intercepting conversations in which a

8   named Target Interceptee is not a participant, to avoid intercepting non-pertinent conversations.

9   It is important that you attempt to identify the named interceptees of this interception and, as

10  well, to identify other individuals who may use the Target Telephones so that the patterns of

11  innocence and involvement mentioned earlier can be recognized and our monitoring may be

12  adjusted in accordance with them.

### IDENTIFICATION OF NEW SUBJECTS

14  17. One of our stated and authorized purposes in conducting this investigation is to identify

15  our Target Interceptees' co-conspirators, accomplices, agents or victims involved in the Target

16  Offenses. As the surveillance progresses, it is likely that you will be able to identify new

17  subjects who function as co-conspirators, accomplices, agents, or victims in the Target Offenses.

18  As soon as any such individual is identified, the Supervising Agent and Supervising Attorney

19  should be notified immediately.

### PRIVILEGED COMMUNICATIONS

21  18. There are special restrictions relating to any communications which would fall under any

22  legal privilege. The general categories of privileged communications are discussed below. If

23  you determine that a conversation is privileged, stop intercepting immediately, but spot-monitor

24  to see if the conversation remains privileged. If you decide that a conversation is not privileged,

25  treat it as a regular interception and apply the above minimization instructions. If you

26  mistakenly overhear a privileged conversation, you should notify the Supervising Agent and

27  Supervising Attorney. You should not pass on the content of the conversation, only pass on the

28  circumstances of the mistaken interception.

a.  Attorney-Client

It is unknown at this time whether any of the subjects are currently being represented by an attorney, although there has been some indication that Leland YEE and Larry REID may have sought legal advice as to matters other than those we are actively investigating. If at any time during the investigation we learn the name of any attorney retained by any possible subject, these names are to be posted in a conspicuous place in the listening post. Any time that it is determined that an attorney is participating in an intercepted conversation over the Target Telephones, call the Supervising Agent and Supervising Attorney immediately. If the conversation involves legal consultation of any kind or any sort of discussion of legal strategy, immediately turn off the monitor and stop recording. However, do not summarize this conversation in the log and, again, you should only pass on the circumstances of the mistaken interception, not the content of the conversation. Rather, you should write the content of what you mistakenly overheard, not in the log, but on a separate piece of paper titled "Attorney Communication," and give this paper, in a sealed envelope, to the Supervising Agent who, in turn, is to give it to the Supervising Attorney.

b.  Parishioner-Clergyman

All communications between a parishioner and his or her clergyman are to be considered privileged. We could not obtain an interception order to listen to a person confessing to a priest in a confessional booth; similarly, we must not intercept a subject discuss his or her personal, financial, or legal problems with his or her priest, minister, rabbi, etc. Thus, if such a communication is intercepted over the Target Telephones, turn off the monitor and stop recording. Then call the supervising agent and attorney. However unlikely, if the conversation reasonably leads you to conclude that the clergyman is acting as a co-conspirator or accomplice, the conversation is not privileged and may be monitored in full.

c.   Husband-Wife

There is also a privilege concerning communications between spouses.  You are to discontinue monitoring if you determine that you are intercepting a personal communication over the Target Telephones solely between a husband and wife.  If it appears that a third person is present during the communication, however, the communication is not privileged.  Also, if the communication does not deal with private matters between a husband and wife, but instead with ongoing (as opposed to past) violations of law, it is not a privileged communication.

d.   Physician-Patient

Conversations between a physician and patient are to be considered privileged. You are to stop intercepting a communication once you determine that it is a communication between a physician and patient that arises out of their professional relationship. Then notify the supervising agent and attorney. Again, if you decide that the doctor is acting as a co-conspirator, or accomplice, the conversation is to be treated like any other intercepted communication.

e.   Psychiatrist-Patient

Conversations between a physician, psychiatrist, psychotherapist, psychologist, and even a social workers functioning in that capacity,  are to be considered privileged. You are to stop intercepting a communication once you determine that it is a communication between a psychiatrist and patient that arises out of their professional relationship. Then notify the supervising agent and attorney. Again, if you decide that the psychiatrist is acting as a co-conspirator, or accomplice, the conversation is to be treated like any other intercepted communication.

f.   Other Relationships

No legal privilege exists with regard to communications between a subject and his

INSTRUCTIONS
UNDER SEAL

or her lover, unless they are married.  Similarly, no legal privilege exists with regard to conversations between a subject and his or her children or relatives.  Keep in mind, however, that our function is to intercept and record conversations related to illegal activities, not indiscriminately to invade the privacy of our subjects and others.  In general, follow the spot-monitoring rules outlined above, if conversations of this type are intercepted.

## NON-PRIVILEGED COMMUNICATIONS

19. Even if a communication does not fall within one of the privileged categories discussed above, that does not automatically mean that we have a right to listen to and record the entire communication.  We have authority to intercept only those communications which pertain to the Target Offenses of the named Interceptees and their unknown associates.  Always remember that eventually a court may have to decide whether we executed the interception Order in the manner specified by the Order.  The standard which a Court is likely to apply in determining whether the interception was properly carried out is simple:  Did the agents make a good faith effort to comply with the restrictions and requirements of the wiretap Order?

> ". . . a court should not admit evidence derived from an electronic surveillance order unless, after reviewing the conduct of the monitoring agents, it is left with the conviction that on the whole the agents have shown high regard for the right of privacy and have done all they reasonably could to avoid unnecessary intrusion."
> United States v. Tortorello, 480 F.2d 764, 784 (2d Cir. 1973).

> ". . . the monitoring agent and thereafter the reviewing court must consider many factors, including the precise relationship of the parties, the length of the relationship, the number of [conversations] between the parties, the state of the investigation, activities, at the time, of the alleged conspirator who is a party to the conversation, and the content of the conversations to determine the appropriate degree of minimization."
> United States v. Falcone, 364 F. Supp. 877, 884 (D.N.J. 1973)

20. You must be alert to the possibility that you may intercept conversations in which defendants in ongoing criminal prosecutions are discussing the facts of their cases.  You are only

INSTRUCTIONS
UNDER SEAL

1    entitled to intercept conversations about ongoing criminal cases if they are pertinent to ongoing

2    criminal activity (i.e., criminal conversations) and non-privileged – just as you may intercept any

3    other pertinent, non-privileged conversation.  You are not to monitor and record any discussion

4    concerning a legal defense or strategy that may be discussed by a subject or other interceptee.

5        21. However, you should also realize that we must be very careful how we use any

6    information which we obtain from such conversation.  Specifically, such information may not be

7    used against a particular defendant in his pending criminal case either directly (as evidence) or

8    indirectly (as leads to obtain evidence).  None of the subjects are currently under federal

9    indictment; however, should you intercept a conversation in which a defendant is discussing the

10   facts of a pending criminal case, call the Supervising Agent and Supervising Attorney and advise

11   them of the nature and substance of the conversation.  Do not, under any circumstances,

12   communicate the substance of the conversation to any prosecutor, agent, police officer, or other

13   government officer who has any connection with the prosecution or investigation of that

14   defendant's pending criminal case.

## SEALING

16       22. You should be aware that the federal statutes which empower District Courts to issue

17   interception orders also place upon us the obligation to record intercepted conversations in a

18   manner that will protect the recordings from editing or other alterations.  It is our responsibility

19   to make available to the judge who issues the interception order all of the recordings of the

20   intercepted conversations which are then to be placed under judicial seal.  Failure to carry out

21   these responsibilities may result in the suppression of the recordings as evidence.  The

22   Supervising Agent has adopted procedures to preserve the chain of custody of the original

23   recordings and to prepare accurate duplicates.  The Supervising Agent will instruct all

24   monitoring agents according to those procedures.

## RECORD KEEPING

26       23. Agents or monitors are to prepare abstracts or summaries of each conversation at the time

27   of interception.  The abstracts or summaries are to be included in the monitoring logs/line sheets.

28   If the conversation was not entirely recorded, an appropriate notation should be made indicating

INSTRUCTIONS
UNDER SEAL

1    the incomplete nature of the conversation (e.g., interception discontinued) and why the full

2    communication was not intercepted (e.g., non-pertinent or privileged). Where the exact words

3    used by the participants are important, a transcript of that portion of the conversation should be

4    prepared as soon as possible thereafter and delivered to the Supervising Agent shortly thereafter.

5        24. The line sheets/logs are to be a reflection of all activity occurring at the listening

6    post which concerns the intercepted conversations, as well as the equipment itself (e.g.,

7    malfunction of recorder, no overheard conversations). You will ultimately use these logs to

8    explain actions you took with respect to particular communications. Therefore, it is vitally

9    important that you describe/identify:

10       a.    the parties of each conversation (name or UM, UF, etc.);

11       b.    the beginning and ending time of any conversations (in order to avoid confusion

12             regarding "A.M." and "P.M.", please use "military time" - that is, a continuous

13             24-hour period of time ranging from 0000 to 2400);

14       e.    whether or not the conversation is pertinent; and

15       f.    if the conversation is not pertinent, indicate whether or not it was minimized and

16             whether spot-monitoring used.

17       g.    In the area reserved for "synopsis":

18             (i)    if a conversation is privileged, indicate the basis for your determination

19                 and type of privileged involved.

20             (ii)    provide summary of conversation (e.g., discussed cocaine delivery, talked

21                 about price and place of delivery). If only part of the conversation was

22                 monitored, indicate why this was done. If you can identify the speakers

23                 by name, please do so. If you believe you know the identity of the

24                 speakers, but are not positive, write the name followed by a question

25                 mark.

26

27                       LENGTH OF INTERCEPTION

28

26. The Court is expected to authorize the interception of wire communications over the Target Telephones for a period of 30 days. The Court's Order is expected to be signed on May 9, 2013, as to the Target Telephones, and interception is anticipated to start May 10, 2013. If interception indeed begins on May 10, 2013, then interception must end on June 8, 2013. If interception does not begin on May 10, 2013, the ending date will be recalculated. In any event, no communications should be intercepted after the 30 day period without a renewal and extension of the Court's Order.

QUESTIONS

27. If anything appears to be developing suddenly, or if a critical question arises, please call AUSA William Frentzen at ███████ (desk) or ███████ (mobile). You may also call me, AUSA S. Waqar Hasib, at ███████ (desk) or ███████ (mobile), or AUSA Susan Badger at ███████ or ███████ (mobile). These numbers will be posted in the wire room. Do not hesitate to call any of us at any time of the day or night.

DATED: May 9, 2013

                    MELINDA HAAG
                    United States Attorney

                    S. WAQAR HASIB
                    Assistant United States Attorney

# EXHIBIT 25

# (To be filed under seal)

Government's Exhibit

MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SUSAN BADGER (CABN 124365)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys
450 Golden Gate Ave., Box 36055
San Francisco, California 94102
Telephone: (415) 436-7200
Fax: (415) 436-6753
E-Mail:      william.frentzen@usdoj.gov
             susan.badger@usdoj.gov
             waqar.hasib@usdoj.gov

Attorneys for United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES FOR AN ORDER AUTHORIZING THE INTERCEPTION OF WIRE AND ELECTRONIC COMMUNICATIONS ON TELEPHONES ███████ AND ████████ AND THE OBTAINING OF GPS PRECISE LOCATION INFORMATION FOR TELEPHONE ████████ | No. <br><br> UNITED STATES' INSTRUCTIONS <br><br> **FILED UNDER SEAL** |

1   <u>TO ALL SPECIAL AGENTS</u>, law enforcement officers, and other personnel under the

2   supervision of law enforcement personnel who are participating in the monitoring of the

3   conversations involving the interception of wire and electronic communications over the

4   following telephones (hereafter the "**Target Telephones**"):

5   **Target Telephone 2**
    Suspected Primary User: Senator Leland YEE

6   Call Number: ▉▉▉▉▉▉
    IMEI: ▉▉▉▉▉▉▉▉▉

7   Provider: Verizon
    Subscriber: ▉▉▉▉▉▉▉

8   ▉▉▉▉▉▉▉▉

9   Type of telephone: cell phone
    Type of interception: wire only

10

11  **Target Telephone 4**
    Suspected Primary User: Senator Leland YEE

12  Call Number: ▉▉▉▉▉
    Provider: AT & T

13  Subscriber: ▉▉▉▉▉▉

14  ▉▉▉▉▉▉
    Type of telephone: land line
    Type of interception: wire only

15

16

17      The anticipated authorization for interception is for certain wire communications over **Target**

18  **Telephones 2 and 4** involving the following persons: Keith JACKSON ("JACKSON"), ▉▉▉▉▉▉

19  ▉▉▉▉▉▉▉▉, California State Senator Leland YEE ("YEE"), ▉▉▉▉▉▉▉▉

20  ▉▉▉▉▉▉▉▉▉▉▉▉▉, Kwok Cheung CHOW, a/k/a Raymond Chow,

21  a/k/a Shrimp Boy, a/k/a Ha Jai ("CHOW"), ▉▉▉▉▉▉▉▉▉, ▉▉▉▉

22  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉,

23  ▉▉▉▉▉▉▉▉▉▉▉▉▉,

24  ▉▉▉▉▉▉▉, and persons whose identities are presently unknown, (collectively,

25  the "Target Subjects and Interceptees"), for a thirty (30) day period, pursuant to 18 U.S.C. §

26  2518.

27  ///

28  ///

# INTRODUCTION

1.    Before participating in any interception, you must

    a.    attend the minimization meeting on June 24, 2013, or listen to the recording of the instructions given at that meeting,

    b.    carefully read the Application, Affidavit, and Court Order that are expected to be signed by the Court on June 25 or June 26, 2013, authorizing the interception of wire communications;

    c.    carefully read these Instructions; and

    d.    after completing the above steps (a-c), **but before you begin monitoring**, sign the attached certification.

A copy of the signed Application, Affidavit, Order, and Instructions will be posted in the wire room at all times during the operation of the surveillance. No one should be in the wire room without completing this certification. Moreover, only individuals involved in this wiretap should be listening to conversations taking place over the **Target Telephones** as they are being monitored. Finally, information received from this wiretap should not be disclosed to anyone outside of this investigation.

2.    Your task is to carry out the Court's Order, intercepting only those communications that are specifically designated, while minimizing the interception of non-pertinent or privileged communications.

3.    The law makes no distinction between intercepting, listening to, overhearing, or monitoring (hereinafter "intercepting") a conversation. Courts generally regard intercepting wire and electronic communications through the use of electronic surveillance like any other search warrant: it authorizes a limited search and a limited seizure of evidence. Any intercepted conversation, whether or not it is recorded or otherwise preserved, is "seized" and subject to the limitations of the Court's Order.

4.    The Court's Order will not allow you to freely intercept and listen to every communication carried on over the **Target Telephones**. Minimization requires that the agents make a good faith determination of whether any conversation is relevant to those illegal activities described below. If you listened to every conversation occurring over the **Target Telephones**,

1   the fruits of your investigation could be suppressed unless all the conversations were pertinent
2   and were not privileged.

3       5.   Anytime a communication or any part thereof is monitored, it must be recorded.  To
4   ensure that the Court can later review exactly what was intercepted, where and when
5   minimization took place, and whether or not the monitoring was conducted in accordance with
6   its Order, the interception equipment has been wired in such a way as to interconnect the
7   recording and monitoring functions. You will not be able to monitor any communication without
8   it being automatically and simultaneously recorded.  Conversely, you will not be able to record
9   any communication without it being automatically and simultaneously monitored.  A single
10  switch will activate both interception and recording so that when you tie into a telephone line to
11  monitor a communication, you will have also activated the recorder.  When you shut off the
12  switch to end your interception, the recording will cease at the same time.  If for some reason we
13  must use machines that have a separate monitor switch, such switch is not to be activated unless
14  the machine is recording.

15      6.   We have to be able to demonstrate that we neither listened to nor recorded
16  communications that we had no right to intercept.  The original recording is our evidence of this.
17  For this reason, **no machine is to be left unattended or on automatic**.

18      7.   However, if at any time a machine malfunctions or it becomes necessary to install another
19  CD while conversations are being intercepted, monitoring is permissible while the situation is
20  being remedied.  Be certain to report any overheard or overseen but non-recorded
21  communications in the interception log as accurately as possible, and to note the time, duration,
22  and nature of the malfunction or other reason for non-recording.  Also, immediately inform the
23  Supervising Agent and the Supervising Attorney about the situation.  In this case, your notes will
24  serve the function of the recording and must be carefully preserved.

25              **COMMUNICATIONS WHICH MAY BE MONITORED**

26      8.   We have obtained authority from the Court to intercept certain wire and electronic
27  communications of the Target Interceptees which occur over **Target Telephones 2 and 4.** The

28

INSTRUCTIONS
UNDER SEAL                                  4

communications we are authorized to intercept are those that relate to the following offenses for the Target Telephones:

(a)   mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343, and 1346;

(b)   money laundering, in violation of Title 18, United States Code, Section 1956;

(c)   violations of the Travel Act, in violation of Title 18, United States Code, Section 1952;

(d)   conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846;

(e)   distribution of controlled substances, in violation of Title 21, United States Code, Section 841;

(f)   use of communication facility to commit or facilitate narcotics offense, in violation of Title 21, United States Code, Section 843(b); and

(g)   unlawful engaging in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1); and

(h)   interstate transportation of stolen property, in violation of Title 18, United States Code, Section 2314.

(hereinafter collectively referred to as the "Target Offenses").

We are permitted by the Court's Order to intercept these wire and electronic communications to achieve the goals of this investigation. These goals are as follows, to identify:

(i)   the nature, extent and methods of operation of all of the Target Subjects' scheme to commit the Target Offenses;

(ii)   the identity of all of the Target Subjects' accomplices, aiders and abettors, co-conspirators and participants in their commission of the Target Offenses;

(iii)   the receipt and distribution of all contraband and money involved in the Target Offenses;

(iv)   the locations and items used in furtherance of the Target Offenses;

(v)   the existence and locations of all documents, books, records and other recordings relating to the Target Offenses;

(vi)   the location and source of all resources used to finance the Target Offenses; and

(vii)   the location and disposition of all of the proceeds from the Target Offenses.

///

9.   You should listen to the beginning of each conversation for as long as, and only for as long as, it is necessary for you to determine if one of the persons named above is a participant and the conversation is pertinent to the subjects and activities targeted by the Court Order, but in any case, usually no longer than a few minutes unless the conversation is pertinent, that is, the conversation is within the scope of our authorization and not privileged.  Title 18, United States Code, Section 2518(5) requires that interception be done "in such a way as to minimize the interception of communications not otherwise subject to interception."  If you determine that the conversation is not a criminal conversation, or is privileged, stop monitoring and begin minimization.  If you determine that the communication is pertinent, you will continue the interception.

## MINIMIZATION / SPOT-MONITORING

10. With respect to interception of wire communications, i.e., voice conversations, if you determine during the initial few minutes that a conversation does not fall within the categories specified in the Order, that is, it is not pertinent, or that the conversation falls within one of the privileges discussed below, the recording and listening devices must be turned off.

11. However, it is possible that some time after the machine is turned off, the conversation will regard the illegal activities listed herein, or that the conversation will cease being of a privileged nature.  To guard against missing a pertinent conversation, spot monitor, that is, check by activating the monitor and record switch periodically to determine if the nature of the conversation has changed so that it has become pertinent.  Listen, observe, and record for a brief period, only as long as is necessary to determine whether the conversation has become pertinent.  This procedure of spot-monitoring may be continued throughout the conversation, but should be kept to the minimum necessary to ascertain whether the conversation has changed.  If, during this brief period of spot-monitoring a pertinent conversation is intercepted, keep listening and recording.  If a non-pertinent or privileged conversation is intercepted, turn off the machine.  You

1    must record the conversations which are overheard even during the brief periods of interception

2    that occur during the spot monitoring.

3        12. Continue the spot monitoring as the circumstances dictate.  In determining whether and

4    when to continue spot interceptions, use your best judgment and the circumstances known to you,

5    such as the identity of the parties to the conversation, the nature of their relationship and past

6    conduct, the presence of any code words, their known current activity, etc.  Here are some

7    guidelines to help you do this.

8        a.    <u>Patterns of Innocence</u>:

9            If after several days of interception, we have consistently found that

10           communications involving a Target Interceptee and a particular person are

11           innocent, non-pertinent, or non-crime related, then a pattern of innocence exists

12           and such conversations should be minimized once the parties are identified but

13           such conversations should also occasionally be spot-monitored as described

        above.

14       b.    <u>Patterns of Involvement</u>:

15           On the other hand, if one or more of the parties to a conversation has been,

16           through the course of the investigation, identified as a co-conspirator, accomplice,

17           agent, or victim of the Target Interceptees or criminal activities, and the

        communication is not privileged, a pattern of involvement in the illegal activity is

18           established.  Once the pattern of involvement has been set, you should let the

19           supervising agent or attorney know, and have them review the need for

20           minimization when the involved party has been identified as a participant to any

        conversation.

21       With respect to electronic communications, i.e. text messages, all monitoring of electronic

22   communications will be conducted in accordance with Chapter 119 of Title 18, United States

23   Code.  Each text message will be reviewed over a secure system, and based on the identities of

24   the sender and recipient and the content of the message, monitoring personnel will determine as

25   soon as practicable after interception whether the text message appears to be relevant to the

26   investigation or otherwise criminal in nature. If the message is not criminal in nature, the

27   message will be marked "minimized" and not accessed by other members of the investigative

28

INSTRUCTIONS
<u>UNDER SEAL</u>       7

team. If the message appears to be privileged, it will be marked "privileged" and secured from access by other members of the investigative team. If a text message appears to be relevant to the investigation or otherwise criminal in nature, it will be marked "non-minimized" and may be shared with the other agents and monitors involved in the investigation. If a text message is marked "minimized" or "privileged," it will not be disseminated to members of the investigative team. All intercepted text messages will be sealed with the court upon the expiration of the court's order authorizing the interception.  It is anticipated that the monitoring location will not be staffed at all times, but will be staffed at regular hours, at which time intercepted communications will be monitored and read (including those intercepted at hours when the location was not staffed). However, even when unmanned, the monitoring location will be kept secured with access limited to only authorized monitoring personnel and their supervising agents.

## COMMUNICATIONS IN FOREIGN LANGUAGES

13. We believe that some of the communications you monitor may be in a foreign language.  When communications in a foreign language are intercepted, we are under exactly the same obligation concerning minimization regardless of whether or not a particular government agent speaks or understands the language being used.  If you determine that the communication is in a language in which you are not fluent, immediately notify the supervising agent.

14. Because it appears that conversations in Cantonese may be intercepted, efforts have been made to obtain Cantonese-speaking monitors to assist in the surveillance.  If a Cantonese translator is reasonably unavailable to minimize communications on the spot, all such conversations should be intercepted and recorded in their entirety.  These conversations must then be minimized as soon as practicable by a translator.  Specific instructions are contained in both the Application and the Court Order.

## EVIDENCE OF OTHER CRIMES

15. We do not have authorization to intercept communications concerning the commission or planning of crimes other than those defined above as illegal activities.  Our authorization is limited to the interception of conversations between our named Target Interceptees and co-

1   conspirators, accomplices, agents, or victims, concerning the illegal activities defined above.  In

2   the event, however, that while you are listening to a pertinent conversation or attempting to

3   determine whether a given conversation is pertinent, you intercept a conversation involving

4   another serious crime – for example, assault, robbery, homicide, or hijacking – listen to and

5   record that conversation.  It is similar to the "plain view" doctrine which applies in the execution

6   of search warrants.  If you do monitor such a conversation, notify the Supervising Agent and

7   Supervising Attorney immediately.

8   <u>**CONVERSATIONS IN WHICH OUR NAMED**</u>

9   <u>**INTERCEPTEES ARE NOT PARTICIPANTS**</u>

10      16. No interception is to be conducted unless it is determined through surveillance, voice

11   identification, or otherwise that at least one of the named Target Interceptees or any of their

12   co-conspirators, once identified, are a party to the conversation for which authorization has been

13   obtained.  We have authority to intercept pertinent conversations in which our Target

14   Interceptees are not participants because we do not know and have not identified all the people

15   who use *the Target Telephones SB 6/24/2013* in connection with the illegal activities.  For example, if Keith JACKSON and Senator

16   Leland YEE are overheard stating that a third person paying a bribe will be calling over a **Target**

17   **Telephone** in a moment, and they plan to hand the **Target Telephone** to a new individual who

18   will assist in funneling the bribe to Senator YEE's accounts, and then the two new individuals

19   begin a conversation over the **Target Telephone** while JACKSON and Senator YEE no longer

20   participate in the conversation, you are authorized to continue to monitor the conversation of the

21   now identified co-conspirators.  However, you are to notify the Supervising Agent and

22   Supervising Attorney so that appropriate modifications can be made in the applications and

23   orders.  You must be extremely careful, however, when intercepting conversations in which a

24   named Target Interceptee is not a participant, to avoid intercepting non-pertinent conversations.

25   It is important that you attempt to identify the named interceptees of this interception and, as

26   well, to identify other individuals who may use the **Target Telephones** so that the patterns of

27   innocence and involvement mentioned earlier can be recognized and our monitoring may be

28   adjusted in accordance with them.

INSTRUCTIONS
<u>UNDER SEAL</u>                                      9

## IDENTIFICATION OF NEW SUBJECTS

17. One of our stated and authorized purposes in conducting this investigation is to identify our Target Interceptees' co-conspirators, accomplices, agents or victims involved in the Target Offenses. As the surveillance progresses, it is likely that you will be able to identify new subjects who function as co-conspirators, accomplices, agents, or victims in the Target Offenses. As soon as any such individual is identified, the Supervising Agent and Supervising Attorney should be notified immediately.

## PRIVILEGED COMMUNICATIONS

18. There are special restrictions relating to any communications which would fall under any legal privilege. The general categories of privileged communications are discussed below. If you determine that a conversation is privileged, stop intercepting immediately, but spot-monitor to see if the conversation remains privileged. If you decide that a conversation is not privileged, treat it as a regular interception and apply the above minimization instructions. If you mistakenly overhear a privileged conversation, you should notify the Supervising Agent and Supervising Attorney. You should not pass on the content of the conversation, only pass on the circumstances of the mistaken interception.

a. Attorney-Client

It is unknown at this time whether any of the subjects are currently being represented by an attorney, although there has been some indication that Leland YEE may have sought legal advice as to matters other than those we are actively investigating. If at any time during the investigation we learn the name of any attorney retained by any possible subject, these names are to be posted in a conspicuous place in the listening post. Any time that it is determined that an attorney is participating in an intercepted conversation over the **Target Telephones,** call the Supervising Agent and Supervising Attorney immediately. If the conversation involves legal consultation of any kind or any sort of discussion of legal strategy, immediately turn off the monitor and stop recording. However, do not summarize this conversation in the log and, again, you should only pass on the circumstances of the mistaken interception, not the content of the conversation.

Rather, you should write the content of what you mistakenly overheard, not in the log, but on a separate piece of paper titled "Attorney Communication," and give this paper, in a sealed envelope, to the Supervising Agent who, in turn, is to give it to the Supervising Attorney.

b.  Parishioner-Clergyman

All communications between a parishioner and his or her clergyman are to be considered privileged.  We could not obtain an interception order to listen to a person confessing to a priest in a confessional booth; similarly, we must not intercept a subject discuss his or her personal, financial, or legal problems with his or her priest, minister, rabbi, etc.  Thus, if such a  communication is intercepted over the **Target Telephones**, turn off the monitor and stop recording. Then call the supervising agent and attorney. However unlikely, if the conversation reasonably leads you to conclude that the clergyman is acting as a co-conspirator or accomplice, the conversation is not privileged and may be monitored in full.

c.  Husband-Wife

There is also a privilege concerning communications between spouses.  You are to discontinue monitoring if you determine that you are intercepting a personal communication over the **Target Telephones** solely between a husband and wife.  If it appears that a third person is present during the communication, however, the communication is not privileged.  Also, if the communication does not deal with private matters between a husband and wife, but instead with ongoing (as opposed to past) violations of law, it is not a privileged communication.

d.  Physician-Patient

Conversations between a physician and patient are to be considered privileged.

1   You are to stop intercepting a communication once you determine that it is a

2   communication between a physician and patient that arises out of their professional

3   relationship.  Then notify the supervising agent and attorney.  Again, if you decide that

4   the doctor is acting as a co-conspirator, or accomplice, the conversation is to be treated

5   like any other intercepted communication.

6

7   e.  Psychiatrist-Patient

8       Conversations between a physician, psychiatrist, psychotherapist, psychologist, and even

9       a social worker functioning in that capacity,  are to be considered privileged.

10      You are to stop intercepting a communication once you determine that it is a

11      communication between a psychiatrist and patient that arises out of their professional

12      relationship.  Then notify the supervising agent and attorney.  Again, if you decide that

13      the psychiatrist is acting as a co-conspirator, or accomplice, the conversation is to be

14      treated like any other intercepted communication.

15

16  f.  Other Relationships

17      No legal privilege exists with regard to communications between a subject and his

18      or her lover, unless they are married.  Similarly, no legal privilege exists with regard to

19      conversations between a subject and his or her children or relatives.  Keep in mind,

20      however, that our function is to intercept and record conversations related to illegal

21      activities, not indiscriminately to invade the privacy of our subjects and others.  In

22      general, follow the spot-monitoring rules outlined above, if conversations of this type are

23      intercepted.

24

25                  **NON-PRIVILEGED COMMUNICATIONS**

26

27  19. Even if a communication does not fall within one of the privileged categories

28



INSTRUCTIONS
UNDER SEAL                          12

discussed above, that does not automatically mean that we have a right to listen to and record the entire communication. We have authority to intercept only those communications which pertain to the Target Offenses of the named Interceptees and their unknown associates. Always remember that eventually a court may have to decide whether we executed the interception Order in the manner specified by the Order. The standard which a Court is likely to apply in determining whether the interception was properly carried out is simple: Did the agents make a good faith effort to comply with the restrictions and requirements of the wiretap Order?

> ". . . a court should not admit evidence derived from an electronic surveillance order unless, after reviewing the conduct of the monitoring agents, it is left with the conviction that on the whole the agents have shown high regard for the right of privacy and have done all they reasonably could to avoid unnecessary intrusion."
> *United States v. Tortorello*, 480 F.2d 764, 784 (2d Cir. 1973).

> ". . . the monitoring agent and thereafter the reviewing court must consider many factors, including the precise relationship of the parties, the length of the relationship, the number of [conversations] between the parties, the state of the investigation, activities, at the time, of the alleged conspirator who is a party to the conversation, and the content of the conversations to determine the appropriate degree of minimization."
> *United States v. Falcone*, 364 F. Supp. 877, 884 (D.N.J. 1973)

20. You must be alert to the possibility that you may intercept conversations in which defendants in ongoing criminal prosecutions are discussing the facts of their cases. You are only entitled to intercept conversations about ongoing criminal cases if they are pertinent to ongoing criminal activity (i.e., criminal conversations) and non-privileged – just as you may intercept any other pertinent, non-privileged conversation. You are not to monitor and record any discussion concerning a legal defense or strategy that may be discussed by a subject or other interceptee.

21. However, you should also realize that we must be very careful how we use any information which we obtain from such conversation. Specifically, such information may not be used against a particular defendant in his pending criminal case either directly (as evidence) or indirectly (as leads to obtain evidence). None of the subjects are currently under federal indictment; however, should you intercept a conversation in which a defendant is discussing the facts of a pending criminal case, call the Supervising Agent and Supervising Attorney and advise them of the nature and substance of the conversation. Do not, under any circumstances,

communicate the substance of the conversation to any prosecutor, agent, police officer, or other government officer who has any connection with the prosecution or investigation of that defendant's pending criminal case.

### SEALING

22. You should be aware that the federal statutes which empower District Courts to issue interception orders also place upon us the obligation to record intercepted conversations in a manner that will protect the recordings from editing or other alterations. It is our responsibility to make available to the judge who issues the interception order all of the recordings of the intercepted conversations which are then to be placed under judicial seal. Failure to carry out these responsibilities may result in the suppression of the recordings as evidence. The Supervising Agent has adopted procedures to preserve the chain of custody of the original recordings and to prepare accurate duplicates. The Supervising Agent will instruct all monitoring agents according to those procedures.

### RECORD KEEPING

23. Agents or monitors are to prepare abstracts or summaries of each conversation at the time of interception. The abstracts or summaries are to be included in the monitoring logs/line sheets. If the conversation was not entirely recorded, an appropriate notation should be made indicating the incomplete nature of the conversation (e.g., interception discontinued) and why the full communication was not intercepted (e.g., non-pertinent or privileged). Where the exact words used by the participants are important, a transcript of that portion of the conversation should be prepared as soon as possible thereafter and delivered to the Supervising Agent shortly thereafter.

24. The line sheets/logs are to be a reflection of all activity occurring at the listening post which concerns the intercepted conversations, as well as the equipment itself (e.g., malfunction of recorder, no overheard conversations). You will ultimately use these logs to explain actions you took with respect to particular communications. Therefore, it is vitally important that you describe/identify:

      a.      the parties of each conversation (name or UM, UF, etc.);

b.    the beginning and ending time of any conversations (in order to avoid confusion regarding "A.M." and "P.M.", please use "military time" - that is, a continuous 24-hour period of time ranging from 0000 to 2400);

c.    whether or not the conversation is pertinent; and

d.    if the conversation is not pertinent, indicate whether or not it was minimized and whether spot-monitoring used.

In the area reserved for "synopsis":

(i)    if a conversation is privileged, indicate the basis for your determination and type of privileged involved.

(ii)    provide summary of conversation (e.g., discussed cocaine delivery, talked about price and place of delivery). If only part of the conversation was monitored, indicate why this was done. If you can identify the speakers by name, please do so. If you believe you know the identity of the speakers, but are not positive, write the name followed by a question mark.

**LENGTH OF INTERCEPTION**

26. The Court is expected to authorize the interception of wire communications over the **Target Telephones** for a period of 30 days. The Court's Order is expected to be signed on June 25 or June 26, 2013 as to **the Target Telephones**, and interception is anticipated to start on June 26 or 27, 2013. If interception indeed begins on June 26, 2013, then interception must end on July 25, 2013. If interception begins on June 27, 2013, then interception must end on July 26, 2013. If interception does not begin on either of these dates, the ending date will be recalculated. In any event, no communications should be intercepted after the 30 day period without a renewal and extension of the Court's Order.

///
///
///

## QUESTIONS

27. If anything appears to be developing suddenly, or if a critical question arises, please call AUSA William Frentzen at ▮▮▮▮ (desk) or ▮▮▮▮ (mobile).  You may also call me, AUSA S. Waqar Hasib, at ▮▮▮▮ (desk) or ▮▮▮▮ (mobile), or AUSA Susan Badger at ▮▮▮▮ or ▮▮▮▮ (mobile).  These numbers will be posted in the wire room.  Do not hesitate to call any of us at any time of the day or night.

DATED: June 24, 2013

MELINDA HAAG
United States Attorney

SUSAN E. BADGER
Assistant United States Attorney