Pages 1 - 32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

```
United States of America,    )
                             )
          Plaintiff,         )
                             )
  VS.                        )         NO. CR 14-0196 CRB
                             )
Leland Yee and Keith Jackson,)
                             )
                             )
          Defendants.        )
_____)
```

San Francisco, California
Monday, February 22, 2016

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

        U.S. ATTORNEY'S OFFICE
        Northern District of California
        450 Golden Gate Avenue
        San Francisco, California  94102
BY:   **SUSAN BADGER**
        **WILLIAM FRENTZEN**
        **S. WAQAR HASIB**
        **ASSISTANT UNITED STATES ATTORNEYS**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:      Kelly L. Shainline, CSR No. 13476, RPR
                Court Reporter Pro Tem

```
 1   APPEARANCES:  (CONTINUED)

 2   For Defendant Leland Yee:

 3                           MURPHY, PEARSON, BRADLEY & FEENEY
                             88 Kearney Street - 10th Floor
 4                           San Francisco, California 94108
                     BY:    JAMES A. LASSART
 5                          ATTORNEY AT LAW

 6   For Defendant Keith Jackson:

 7                           MORRISON & FOERSTER
                             425 Market Street
 8                           San Francisco, California 94105
                     BY:    SOMNATH RAJ CHATTERJEE
 9                          ATTORNEY AT LAW

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>Monday - February 22, 2016</u>                    <u>2:00 p.m.</u>

**THE CLERK:**  Calling case CR 14-0196, The United States of America versus Leland Yee, Keith Jackson.

Appearances, counsel.  Please come up to the podium.

**MS. BADGER:**  Good afternoon, Your Honor.

Susan Badger, William Frentzen, and Waqar Hasib on behalf of the United States.

**MR. CHATTERJEE:**  Good afternoon, Your Honor.

Raj Chatterjee here on behalf of Keith Jackson.

**MR. LASSART:**  Good afternoon, Your Honor.

James Lassart appearing on behalf of Leland Yee.

**THE COURT:**  Good afternoon.  I note that the defendants aren't present, and it's my intention to discuss a scheduling matter as distinct from anything of substance. However, this is being memorialized by the court reporter so there will be a transcript of it.

And this is why I want to discuss it with the government and with counsel for Mr. Yee and Mr. Keith Jackson.

Over the last few days, quite a few days, I've been reading the presentence materials, the reports, the memoranda, the guidelines, you know, preparing for the sentencing hearing which is scheduled for Wednesday.

It is obvious anyone looking at it would see that there's a substantial dispute between the parties as to the guideline range.  And obviously -- well, I can say two things.  Number

1    one, under the law the Court must resolve any disputes as to

2    the guideline range where they are certainly relevant factors

3    with respect to sentencing.

4        The exercise that the Court follows, and I think it is the

5    one that's appropriate, would be the first thing you do is set

6    the sentencing guideline range, and then you weigh that

7    determination along with five or so other factors which are

8    listed in 3553(a), including the characteristics of the

9    defendant, the history, the nature and circumstances of the

10   events, et cetera, et cetera.

11       Okay.  So it's one factor among other factors that the

12   Court -- that is, the sentencing guideline range is one factor

13   among other factors that the Court would consider in imposing a

14   sentence.  As such, I think that it's clear that the parties

15   are entitled to have a correct -- at least what the Court

16   considers to be a correct sentencing guideline range.

17       After having said that, and added to it the fact that

18   there are substantial disputes between the parties as to what

19   is the appropriate sentencing guideline range, I wanted to make

20   the following suggestion, which is:  That under 6A1.3, the

21   Court has the power and is required to conduct some type of

22   hearing where there are disputes of relevant factors that would

23   be considered by the Court in determining the sentence.  That

24   hearing is not like most other hearings in any Court

25   proceeding.  Number one, the rules of evidence don't apply.

1   Number two, the standard that is to be applied by the Court is

2   one based upon a probability of truth of the assertion, as

3   distinct from preponderance of the evidence.  It may be

4   preponderance and probability are one and the same, I've never

5   quite figured out the distinctions.  But it's certainly not

6   beyond a reasonable doubt and it's not clear and convincing.

7   It's a much more relaxed standard.

8        So I think that's a correct statement of the law and where

9   we are.

10        Now, it also occurred to me that the defendants in this

11   case -- I'm talking about your clients -- have entered a plea

12   of guilty.  That is done for a variety of reasons, one of which

13   is that there's not been a public parade of all of the evidence

14   that the government believes to be incriminatory and perhaps

15   contextual in any given situation because it's not necessary in

16   light of the fact that a defendant has pled guilty to the

17   offense.

18        If a hearing takes place of the type that I've described,

19   then to some extent, depending on what the evidence is, that

20   benefit, if it's a benefit, has been eliminated.  That is to

21   say, witnesses come, they're cross-examined.  The rules of

22   evidence don't apply.  It becomes a very different kind of

23   hearing than at trial, but it has the same impact in some

24   measure of presenting evidence, or whatever one wants to call

25   these things, facts, impressions, circumstances, that the

1   defense, by virtue of the pleas, have set aside or have not

2   required any showing in light of the guilty plea.

3       So the question is, in the Court's mind, what does the

4   defense want to do?  Not actually soliciting the government's

5   views.  Nor am I soliciting your views today.  Okay.  Because I

6   think in any event, it's something that you have to talk to

7   your -- one, you have to think about it, and number two, you

8   have to talk to your client, and I think that this sort of

9   thing is the client's call.

10      Looking at -- let's take Senator Yee for a moment.  The

11  Probation Department has found that he's in adjusted offense

12  level 29.  They're using criminal history category one,

13  adjusted offense level 29, that the range is 87 to 108 months.

14      The government has asked for 96 months.

15          **MS. BADGER:**  I don't think that's right.

16          **THE COURT:**  Is that correct?

17          **MS. BADGER:**  Your Honor, I apologize.  I did not bring

18  up my copy of the final draft of the PSR, but there was an

19  adjustment.  I thought it was --

20          **THE COURT:**  Well, I may not -- I have --

21          **MS. BADGER:**  I'm sorry.

22          **THE COURT:**  I have the report of February 10.

23          **MS. BADGER:**  70 to 87 months comes to mind.

24          **THE COURT:**  Wait a minute, wait a minute.  Thank you.

25  Let me look.  I must have either copied it incorrectly or I

1    have the wrong report.

2          **MS. BADGER:**  There was a revised version filed on

3    February 17th.

4          **THE COURT:**  And what is it?  I'm sorry.  Is it

5    adjusted offense level 29?

6          **MS. BADGER:**  Well, I'm sorry, I don't have my copy.

7    It was adjusted downward -- if anybody -- nobody has their

8    guidelines.

9          **THE COURT:**  Well, what do you think it is?

10         **MS. BADGER:**  It came out to -- I believe it was 70 to

11   87 months.

12         **THE COURT:**  Well, 70 to 87 months would be 27.

13         **MS. BADGER:**  That sounds right.  With the acceptance

14   of responsibil --

15         **THE COURT:**  The final adjusted offense level 87 -- I

16   mean, 27.  Well, okay, wait a minute.  Let me just -- let's

17   assume that's what it is for the sake of this discussion.

18   Nobody's bound by it.  Nobody's bound by it.  Okay?

19      Okay.  If it's 27 and one, that would be 70 to 87 months.

20   The government recommendation, though, is what?

21         **MS. BADGER:**  96 months.

22         **THE COURT:**  Okay.  So an upward?

23         **MS. BADGER:**  Correct.

24         **THE COURT:**  An upward departure.

25         **MS. BADGER:**  Correct.

1      **THE COURT:**  Okay.  And I want to set aside upward

2  departures for a moment.

3      The defense has said that the sentencing guideline range

4  is 51 to 63 months, I think.

5      **MR. LASSART:**  Correct.

6      **THE COURT:**  And so that would be -- 51 to 63, and that

7  would be 24.

8      **MR. LASSART:**  24.

9      **THE COURT:**  Since I haven't seen this memorandum, or

10  at least I don't have it in mind, does the government take the

11  position -- maybe I should have done Keith Jackson first.  Does

12  the government take the position that the recommendation of 96

13  is an upward departure?

14      **MS. BADGER:**  It is an upward adjustment, Your Honor.

15  We agreed with the calculation of 70 to 87 months.

16      **THE COURT:**  Okay.  So here is my point.  My point is

17  that if the defense does not challenge the offense level 27,

18  which presently they do, but doesn't challenge that for

19  purposes of sentencing, I don't have to have a sentencing

20  hearing on all of these issues relating to was it correctly

21  calculated.

22      And the reason I'm saying that is because since I would

23  consider all of those other factors, five of them in number, I

24  think, in imposing a sentence, I, for one, don't believe that I

25  would attribute more weight -- I mean, I can assure you that I

1    would not attribute more weight than the sentencing guideline

2    range, whatever it is, to the other factors.

3        So what I'm saying is its role in this sentencing process,

4    while it has a role, isn't the predominant role necessarily.

5    It is simply one of the parts to it.  And I would also say that

6    however the evidence worked out, whatever it was, obviously

7    that would be considered by the Court.

8        So where I am today is I consider the submissions that

9    have been filed without looking at an evidentiary hearing.

10   Everybody has made their arguments.  Your argument is there's

11   no evidence that it was 200 weapons or more.  You have other

12   arguments, but that's a principal argument.  There are other

13   arguments that you make as well.  And I have whatever the

14   record is in front of me.

15       Obviously, if that record is challenged and we have an

16   evidentiary hearing, then it's whatever comes out at the

17   evidentiary hearing.  Okay.

18       So let me put you aside, Mr. Lassart, for a moment and

19   talk to Mr. Chatterjee.

20       Let's take your case.  Your case, unless I got this one

21   wrong as well, is that the Probation Department found that the

22   guideline range was adjusted offense level of 33 and the

23   guideline range was 135 to 168.  Is everybody on the same page

24   there?

25            **MR. CHATTERJEE:**  That sounds correct to me,

1    Your Honor.  I don't have the brief in front of me, but that

2    sounds right.

3           THE COURT:  All right.  The government has made a

4    recommendation of 100 -- well, the plea agreement, unlike

5    Mr. Lassart's situation where he did not agree to a range in

6    the plea agreement, you did.

7           MR. CHATTERJEE:  Correct.

8           THE COURT:  And the plea agreement is 72 to 120

9    months.

10          MR. CHATTERJEE:  Six years to ten years, yes.

11          THE COURT:  Pardon me?

12          MR. CHATTERJEE:  Yes, six to ten years.

13          THE COURT:  Yes.  The government recommends 120, the

14   defense says 72.  And what you would have to agree to, if you

15   wanted to avoid, I think, the sentencing hearing on the

16   guideline range is agree that you would not object if a

17   guideline range was set at 30.  Because 30 encompasses your

18   plea agreement.  I mean, it's one month over, but no one cares

19   about that.  I say nobody cares about it.  I can tell you a

20   long story about somebody who did care about it, but it's

21   not -- for these purposes, it makes no difference.

22          And so what I'm saying in so many words is I'd like you to

23   figure out whether you want to proceed by way of a sentencing

24   hearing that would be in the form of an evidentiary hearing in

25   which your various objections to the sentencing guideline

calculation are aired, considered for the purpose of setting

the sentencing guideline range.

I, again, will say that it is my view that I can sentence

based upon the proposal that I have stated, that is, that a

party agrees not to a sentencing guideline range, but that they

would have no objection for purposes of sentencing that a

sentencing guideline range of, in Mr. Jackson's agreement, be

30, and I think in Senator Yee's, I have 28, one over what was

found by the Probation Department.

I think that's right.  Have I said it right?

**MS. BADGER:**  27, I think, Your Honor.

**THE COURT:**  Well, guideline range the Probation

Department found was 27.  Well, let's see.

**MR. LASSART:**  They adjusted down also one, I think.

**THE COURT:**  Well, I may have to get the government's

consent on that, then.

**MS. BADGER:**  We -- so we agree --

**THE COURT:**  In other words, you are asking for a

departure.

**MS. BADGER:**  Yes.

**THE COURT:**  And so you are asking for a departure of

27.  You're asking for a departure from the high of -- from the

70 to 87, you're saying 96.

**MS. BADGER:**  Right.  But we do agree with the

calculation.  We think the calculation of the guideline

1  range --

2         **THE COURT:**  Is 70 to 87 months.

3         **MS. BADGER:**  Correct.

4         **THE COURT:**  And what is your view as to that?

5         **MR. LASSART:**  What, Your Honor?

6         **THE COURT:**  Your view is either in agreement that the

7  range is 70 to 80 months -- no, you don't.  You say it's 51 to

8  63.

9         **MR. LASSART:**  It's 51 to 63.

10         **THE COURT:**  Okay.  So it is you that has to deal with

11  it.

12         **MR. LASSART:**  Assuming the government is right, that's

13  right.

14         **MS. BADGER:**  Well --

15         **THE COURT:**  Well, you see, but it's not a question --

16  what I'm saying to you, it's not a question of who's right or

17  who's wrong because I don't know that until I have a hearing.

18  And the question is:  Do you want to have the hearing?  And

19  what I'm suggesting to you is that you can have the hearing,

20  highly appropriate to have the hearing, and then I will do my

21  best to set the sentencing guideline range and then I will do

22  the sentence after I take all the 3553(a) factors into account.

23      A second way to do it is to simply agree that you don't

24  object to what is proposed as a guideline range and continue to

25  argue your particular sentence that you think is appropriate.

1    I think for those purposes, obviously, if you do get into

2    that agreement, we would have to not have argument such as,

3    well, we're -- you know, look at the defense, they're arguing

4    for 24 months under the -- whatever it is, X number of months

5    under the guideline range.

6    I'm saying to you that there are factors in these two

7    cases that are actually of great significance that really do

8    control how the sentencing would work other than the fine

9    tuning of a sentencing guideline range.  In Senator Yee's case,

10   it's because he's a -- you know, was a politician or was held

11   to elective office.  That's a different -- even though of

12   course, public corruption and so forth and so on are

13   encompassed within the guidelines, but that is a significant

14   difference from the run-of-the-mill case.

15   So I don't know.  You know, I don't know how you want to

16   come out.  I know one thing is that if you do decide that you

17   want your evidentiary hearing, I do not believe it can be done

18   on Wednesday.  I think I'm going to have to set aside some time

19   to have a full-blown evidentiary hearing because it's going to

20   take a considerable period of time to go through these things,

21   marshal the evidence, argue the evidence, and see if it ought

22   to be subject to -- you know, and see what the parties want to

23   do with respect to any witnesses.

24        **MR. CHATTERJEE:**  Your Honor --

25        **THE COURT:**  Yes, Mr. Chatterjee.

1          **MR. CHATTERJEE:**  May I --

2          **THE COURT:**  I mean, that's what I'm thinking about.

3     And the reason I put it on the table is basically a

4     scheduling -- first, a scheduling issue.  And I don't think I

5     have these problems with either Randy Jackson or Marlon

6     Sullivan.  They're in a separate category.  But I do have them

7     with the submissions that I've received.

8        Mr. Chatterjee.

9          **MR. CHATTERJEE:**  I just want to explore a third option

10    for consideration, and that is, at least with regard to

11    Mr. Jackson, I think there's two principal issues that go to

12    sentencing guidelines.  One is, as Your Honor mentioned, the

13    number of guns involved in the conspiracy.  And number two,

14    whether some of the charges that are to be dismissed is

15    relevant conduct under the sentencing guidelines for purposes

16    of count two, which is the campaign conspiracies.  I think

17    those are the two principal issues.  And the parties set forth

18    their positions in their papers.

19       And the third option I'm exploring is to submit to the

20    Court on the record that's been submitted and let the parties

21    argue their side and let the Court resolve the issue in lieu of

22    having an evidentiary hearing.

23          **THE COURT:**  I think it's inconclusive.  I mean, I

24    think you have objected to the -- you objected to this

25    evidence.  So, I mean, how could I -- how can I under 6A1.3,

1    how can I do it?  I don't think I can.

2         **MR. FRENTZEN:**  That's accurate, Your Honor.  I mean,

3    what happened here was that there were presentations of

4    evidence in the form of discovery.  And the Probation Office

5    got that.  The Probation Office received objections from

6    defendant Jackson with regard to these issues which are, at

7    their core, basically factual issues.  The Probation Office

8    disagreed with them.

9         When we filed our sentencing memorandum, we relied on a

10   PSR that had made factual findings that we agreed with.  So the

11   issue was then in the sentencing memo that they filed

12   contemporaneously with our sentencing memo, they reiterated but

13   added to those original objections that the Probation Office

14   had already resolved in the way that the government believed

15   that they should properly be resolved.  And then they filed a

16   response, which candidly I was preparing a reply, which perhaps

17   now I don't necessarily need to go through but which was

18   largely a layout of factual matters.

19        But I tend to agree with the Court.  If the issue is going

20   to be joined about the extent to which the -- for example, the

21   number of firearms was in fact prospectively 200 or more, or to

22   the extent to which the narcotics trafficking, firearms

23   trafficking, and murder-for-hire were integrated into the count

24   two conduct, which -- and one of the things is there is

25   conversation after conversation where the conversations bounce

1    around from narcotics trafficking to weapons trafficking from

2    the Philippines to Senator Yee needs money to -- et cetera,

3    et cetera, to the extent that we view them as relevant conduct,

4    but these are, at its core, factual matters.  And so if it's

5    going to be joined, then we would tend to agree that we're

6    happy to lay it out for the Court, it's just going to take some

7    time.

8           THE COURT:  Let me -- that is my view with respect to

9    the record.  But let me add another factor.

10          It's hard for me to see any of the things that are

11   discussed in the presentence report and in the submission of

12   the government, as an example, that wouldn't have some

13   tangential relevance to the 3553(a) factors, that is to say,

14   that I'm supposed to look at the history and characteristics of

15   the defendant.

16          Now, it may be that your position is absolutely correct

17   that in terms of relevant conduct, it doesn't come in.  But

18   because it doesn't come in as relevant conduct doesn't mean

19   it's excluded if it's of some significance, excluded from the

20   Court's consideration in fashioning the appropriate sentence.

21          MR. CHATTERJEE:  We understand that.

22          THE COURT:  So I'm trying to figure out what do you

23   gain?  I mean, I hate to -- number one, I don't want to lead

24   you along to say that if you do X, you'll get a particular

25   sentence, if you do Y, you'll get a particular sentence.  No.

I have to tell you my mind is open on the subject of the appropriate sentence.

What I'm saying to you is that if in fact there is -- if in fact these materials to some extent come in for the Court's consideration as to the appropriate sentence, I don't know what the big -- I don't know how to say it.  I wonder whether the dispute is really -- is really so crucial to the determination of the appropriate sentence.

Now, it may look to you like, well, gee, the judge wants to avoid work, or, you know, this whole thing is fraught with, you know, quote, uncertainties that on an appeal if we're unhappy with the result, we're able to challenge.

And to which I would say that may be the case, I don't know.  You haven't given up your right.  I haven't looked at a plea agreement.  But I always take the position, much to the consternation of the government, that if I make an error at the time of sentencing, that's preserved.  Putting that aside, whether it is or not, I don't know, in the plea agreement.  It probably isn't, but that's another issue.

But it seems to me one thing I would say so you're not -- you know, you're not deceived is once I get my calculation and so forth, if it's a contested calculation, I would also say whatever weight I would give to the calculation and what weight I give to all the other factors that are considered, you know, it's one factor among others.  And if it's an accurate

1   statement of the law that I would consider all these things or

2   can consider these things, then I have to wonder what is to be

3   gained by it.  That's all I -- you know, that's what my present

4   thinking is.

5        Mr. Lassart?

6        **MR. LASSART:**  Your Honor, what puts me in a dilemma is

7   that I'm hearing the Court say that they're treating the

8   sentence guideline calculations between the two parties,

9   because that's where we are, which in essence is a dispute

10  that's generated by the enhancement arguments.  That's really

11  what's driving the sentence guideline difference between the

12  two parties.  This is looking at this as if it were a disputed

13  fact, much like a summary judgment type of situation.

14       Now, I know you don't apply *Celotex* to criminal law, but

15  when I see a disputed fact like that, I have to be concerned of

16  what the Court's thought is on the dispute on the analysis

17  between the two sides with regard to the enhancement evidence.

18       And I understand what the Court is saying is the 6A1

19  analysis is -- or hearing is a way to generate in an

20  evidentiary format an ability for the Court to decipher or

21  choose, so to speak, where the enhancement lies to determine

22  what the guidelines are.

23       Now, I don't know how the Court is going to weigh the

24  guidelines so I'm -- that's where, if the Court were to say,

25  well, that is just another factor, like you said in the

1   beginning, that would be fine.  But we all are -- I'm concerned

2   on my client's behalf.  I don't know how that all fits, that's

3   my concern.  And I don't know where the government is on that.

4   But I think that's where we are.  We have two disputed analyses

5   on a factual basis that lead to two different guideline ranges,

6   and that's what's before the Court.

7       Now, I have -- I'm always loathe to throw things up in the

8   air and see what happens because I like a little more control

9   of that, but that's my problem.  I'm just kind of giving the

10  Court back what my thoughts are on this.  I don't know where I

11  would come down on it until I spoke to the client.  I think I

12  know, but I'm thinking of the issues like, you know:  Is there

13  a waiver in here somewhere?  Who's going to get called as a

14  witness?  All of those issues are percolating in this little

15  6A1 hearing.  And there may be a critical witness that I can't

16  call because of their Fifth Amendment right.

17      Those are all the issues that this kind of an analysis

18  generates, Your Honor.  I don't know if that helped or just

19  made it worse.

20          **THE COURT:**  Well, you know, it helps explain to me why

21  it's a difficult decision for you to make because it's a set of

22  uncertainties.  I don't have an answer for that.

23      I mean, I look at it and I've heard the evidence and read

24  the evidence.  Let's take the gun enhancement as an example.

25  The defense points out nobody said 200 weapons.  The

1   prosecution says, well, he talked about deals that would be

2   somewhere -- costing somewhere in the neighborhood of -- I'm

3   going to be wrong but I'd say a half million or a quarter

4   million -- half a million to two and a half million dollars,

5   and here's my expert's declaration that says that's got to be

6   at least 200 weapons.

7        Okay.  Taking those two facts, taking those two views of

8   it, I don't know whether that's enough to come to a conclusion

9   based upon a preponderance of the evidence as to whether

10  that -- the people would understand that to mean 200 or more

11  weapons or whether they wouldn't.  But what I'm saying to you

12  is it wouldn't make much difference to me.  That's what I'm

13  saying.  What I'm saying is I've heard the evidence.  The

14  evidence said 200 on the one hand, and on the other hand they

15  were talking about large-scale arrangements.  I don't know.

16  That's -- you know, sometimes that's just what the evidence is.

17  There it is.

18       Now, what do I do with that?  It's hard, necessarily.  And

19  I think, one, I wait.  If I have an evidentiary hearing, I wait

20  and see exactly what is the record as to the 200 weapons.

21  Everybody flushes it out.  In comes the person with the

22  testimony.  Or in comes -- we play the recording or dot, dot,

23  dot, dot, dot.  We do all that.  And then I may be no better

24  off than I am today, or I may be better off, you know.

25       Okay.  Or we leave it alone, and I just say, okay, that's

1    what it is.  How does that fit into what the appropriate

2    sentence is?

3        I don't know how else -- I mean, it may be that we're all

4    sitting with different roles in this and trying to figure out

5    how to deal with it.

6              MR. LASSART:  Your Honor, may I suggest this?

7              THE COURT:  I don't fault anybody for teeing it up.

8    But having teed it up, I have to resolve it.

9              MR. LASSART:  Your Honor, I guess my suggestion would

10   be, like most decisions that are hard, to delay them a little

11   bit.  It seems to me that if this opportunity is out there, I'm

12   going to have to look at it and explain it to the client and

13   see what the client says before I can answer these questions.

14             THE COURT:  No, I don't think you have to answer -- I

15   mean, it seems to me that you can -- I don't know on that.  My

16   guess is that you will want to know before probably Wednesday

17   morning because you probably have people who -- I don't know

18   whether you expect to call any witnesses or people to get up

19   and speak or not.  Maybe not.

20             MR. LASSART:  I don't.  I don't.

21             THE COURT:  You don't.  Well, okay.  Let's say

22   Wednesday morning you simply say we're ready to proceed with

23   sentencing now, or there is a dispute, there remains a dispute

24   and so we need to have an evidentiary hearing to resolve the

25   dispute.

1    So I'm not trying to -- I'm sorry I didn't -- I mean, I

2  only turned to these materials last week, but, you know, the

3  more I read through them, and they're voluminous -- not

4  voluminous, but they're considerable -- the more I looked at it

5  trying to figure out how am I going to do it?  How am I going

6  to do it?

7    You know, I'm willing to postpone the sentencing in either

8  or both of your cases.  I'm willing to treat them differently.

9  You don't have to agree, the two of you, as to what should be

10  done, one or the other.

11    I don't know what else to do, you know.  I sort of wanted

12  to do it without a circus of everybody being here because I

13  actually wanted you to be able to decide things based upon what

14  I call reasoned, thoughtful decision.

15        **MR. LASSART:**  A little reflection.

16        **THE COURT:**  Well, you know, it's tough.  You know,

17  being a trial lawyer, you know, you make decisions all the

18  time.  You have to make them quickly.  Here you don't have to

19  make them so quickly.  And believe me, I thoroughly understand

20  the significance of sentencing.  It is -- you know, it is

21  obviously a significant deal.

22    So I think that's -- yeah, let me answer any questions.  I

23  just don't want to get into the substance of any arguing

24  because your clients aren't here.  That's why I toss out just

25  the procedural aspect.

1      **MR. LASSART:**  I don't want to get into the substance,

2  Your Honor, but I am interested in the procedure and that's one

3  of the concerns I have.  Who goes first in this hearing?  Who's

4  the lead?  I understand that probably the government because

5  they have a burden.  We probably disagree that it's a

6  preponderance as opposed to clear and convincing, but that's

7  another issue that the Court has to deal with.

8      **THE COURT:**  Well, as I understand the issue, it

9  becomes a clear -- it's not always a preponderance of the

10  evidence.  To the extent that it is a significant increase in

11  the guideline range, a higher standard is used.  So I think

12  that's correct.

13      **MR. LASSART:**  And so the Court knows, it's not -- I

14  mean, if there's 200 guns, there's a 10-level raise.  That's

15  what this -- this is a large amount of this issue.  That's what

16  this -- the reason both sides are talking about this issue.

17  And that's where we are.

18      **MS. BADGER:**  Although, I believe a less than

19  200 guns -- again, I apologize, I don't have my guidelines in

20  front of me, but there's still -- if some amount of guns are

21  contemplated, then there's --

22      **THE COURT:**  Yeah, what is it?

23      **MS. BADGER:**  -- another adjustment.

24      **THE COURT:**  I had my guidelines.

25      **MR. FRENTZEN:**  It's 2K2.1, Your Honor.

1          **THE COURT:**  What?

2          **MR. FRENTZEN:**  It's 2K2.1.  I believe the next

3     drop-down is 100 guns, if I'm not mistaken.

4          **THE COURT:**  And what is the enhancement at that?

5          **MR. FRENTZEN:**  I think it would be two less levels if

6     it was 100.

7          **THE COURT:**  25 to 90, 96.  There's no dispute here, is

8     there, that it was at least 25?

9          **MR. LASSART:**  Well, you know, Your Honor, I think this

10    is a dispute --

11         **THE COURT:**  Well, I'd go with the papers, but I think

12    there's no dispute.

13         **MS. BADGER:**  Well, there was even -- Senator Yee

14    discussed at one point there was 100 rifles available.  So --

15    and that's in our papers.

16         **THE COURT:**  Well, let's say 25.  We're really talking

17    about four -- four levels.  So we're not really talking about

18    ten.  What I'm saying is that what's in dispute is at most four

19    and possibly two.  You have to -- these are all tradeoffs.

20         **MR. CHATTERJEE:**  Well, I think we understand the

21    Court's concerns.  I say when it comes to the guns, those are

22    just talk in the Philippines.  There's no agreement as to any

23    number of guns or weapons or types of weapons.  So we -- you

24    know, obviously we have to make a decision.

25         **THE COURT:**  I think there was some discussion of types

1    of weapons.

2         **MR. CHATTERJEE:**  Well, there was discussion.  There

3    was lots of discussion.  There was no agreement.  There was no

4    confirmation of what they were going to do.  It was -- there

5    was certainly discussion about it.  There's no question about

6    that.  But discussion itself is -- doesn't rise to the level of

7    the enhancement, in our view.

8         **THE COURT:**  Well, if your view is accepted, which it

9    could be as a matter of law, as you state, the fact that

10   they're talking about AK47s, or whatever it is, and there were

11   these discussions can be considered by the Court in imposing

12   the sentence.

13       So it may not -- what I'm saying is all of this may not

14   translate into the guideline range, but it's not that it

15   wouldn't be considered in some form in trying to arrive at an

16   appropriate sentence.

17       **MR. CHATTERJEE:**  Well, we'll certainly discuss this

18   with our client.  And we understand the Court's questions.

19       **THE COURT:**  Well, just let the government know.  I

20   think, you know, let the government know, let me know.  I'd

21   like to know, if at all possible, tomorrow at the end of the

22   day whether you want to proceed with sentencing on Wednesday if

23   you can't -- you'll have to be here on Wednesday in any event.

24   But if you feel that there ought to be some resolution of the

25   sentencing guideline range, then I will simply pick a date for

1    a hearing on those matters.

2           **MR. CHATTERJEE:**  And at least I want to clarify for

3    Mr. Jackson.  To avoid a hearing, under your view, we'd have to

4    not object to a range of 30?

5           **THE COURT:**  Well, I looked at -- for whatever 120 is.

6    Everybody agrees -- we'll limit it to 120 -- is 30, adjusted

7    offense level of 30.  It's now 33.  The government states that

8    they're not asking for an upward departure, they're asking

9    actually for a variance down to -- down to 120 months or down

10   to 30.  It is your view, however, that the guideline range is

11   lower.  Okay.  I don't know how else to deal with it.

12          **MR. LASSART:**  Your Honor, can I ask you this?

13          **THE COURT:**  You can ask me anything, Mr. Lassart.

14          **MR. LASSART:**  It doesn't guarantee an answer, does it?

15          **THE COURT:**  Well, it doesn't guarantee the right

16   answer, but you'll get an answer.

17          **MR. LASSART:**  If there is no hearing requested, is it

18   the Court's thought that we have waived our objections?

19          **THE COURT:**  Well, yes.  I mean, I think you have to --

20   I think that what is incorporated in there is to the extent

21   your objections go to a guideline factor, you will have waived

22   it.  Absolutely.  Because I have to rule on the objection.

23       Now, it's easy to rule on should this language be in or

24   should this be out, so forth and so on.  But where you object

25   to something that is part of the sentencing guideline range, I

1    would have to rule on it.  And I'm seeking your opinion --

2         **MR. LASSART:**  So if we waive the hearing, then we

3    would -- the Court would consider the fact that we waived

4    objecting to the guideline range.

5         **THE COURT:**  Yes.

6         **MR. LASSART:**  Okay.

7         **THE COURT:**  I believe that's accurate.  That you have

8    agreed not to object.  You're not saying you think it's the

9    correct guideline range, but you are for -- like a guilty plea.

10   You're not even saying your client would necessarily be

11   convicted at trial, but a person who enters a guilty plea

12   admits certain facts, and I guess in my view pleads guilty

13   because he is guilty.  But maybe that's a bad analogy.

14        But at any rate, yes, it is -- since your -- well, not

15   your client, but since Mr. Jackson agreed to a sentencing

16   guideline -- a sentence -- I mean, a sentence -- he didn't

17   agree to a guideline range, he agreed to a particular sentence

18   range, the way I view that is I view that that range is a range

19   of reasonable sentences.

20        **MR. LASSART:**  So -- just so --

21        **THE COURT:**  So I don't know -- in other words, for

22   example, I don't know -- let's say I sentence him to the upper

23   part of the range and he wants to appeal.  I don't know how he

24   can appeal a sentence that's within the plea agreement unless I

25   incorporated some impermissible factor.

1          **MR. LASSART:**  Your Honor, that's why we're different.

2    We don't have --

3          **THE COURT:**  Well, you're different --

4          **MR. LASSART:**  That's what I'm concerned about is I

5    have objected to the guideline range proposed by probation as

6    it stands today.  Because we've said that the guideline range

7    is X and gave the Court our reasons.  The Court has now offered

8    us a hearing on that.  We decline to have that hearing.  I'm

9    concerned that if I don't have a hearing, any objection I have

10   with regard to the -- that is above the range that we believe

11   is correct, I'll lose the right of an appellate issue on that.

12         **THE COURT:**  Yes, and that's absolutely correct.

13         **MR. LASSART:**  So, in other words, I'm being backed

14   into a hearing.

15         **THE COURT:**  You're what?

16         **MR. LASSART:**  I'm being backed into a hearing.  I have

17   no choice.

18         **THE COURT:**  Oh, well, that's up to you.

19         **MR. LASSART:**  Okay.

20         **THE COURT:**  That's up to you.  It's entirely up to

21   you.  I mean, the choice you have is whether you want a hearing

22   or not.

23         **MR. LASSART:**  Or do I want to preserve the objections

24   or not.

25         **THE COURT:**  Well, but you can't -- I mean, it's like

1   you say I'm going to object, which you do.  And so it's my job

2   to say objection sustained, objection overruled.

3        **MR. LASSART:**  Correct.

4        **THE COURT:**  And all I'm saying is in order to say

5   those words, say those words, I need to have a resolution on an

6   evidentiary basis for saying whatever words I'm going to say,

7   whether objection sustained, objection overruled.

8        **MR. LASSART:**  And I appreciate the Court telling me

9   because this gives -- I can discuss this with some meat on the

10  subject when I talk to my client about it.

11       **THE COURT:**  As far as I'm concerned, the context where

12  we are today is we're heading for an evidentiary hearing, which

13  is why I brought you in.  I thought, well, there are all sorts

14  of dynamics that operate in sentencing, not the least of which

15  is that some defendant may want to be sentenced.  I'm not going

16  to remand the defendants.  I'm going to give them a reasonable

17  period of time to surrender.

18       So it doesn't have an impact on that if you didn't want to

19  go ahead on Wednesday and have to surrender on Wednesday.  No,

20  that's off the table.  I'm not going to give them an extended

21  period of time.  They're both going to jail.  And I will give a

22  reasonable time so the BOP can designate an institution and so

23  forth.  Okay.  That's off.

24       So now you look at and say where do I want to be on

25  Wednesday?  Probably somewhere other than here.

1        **MR. LASSART:**  Oh, it will be interesting, I'm sure.

2        **MR. CHATTERJEE:**  I think we understand that we won't

3    be calling witnesses on Wednesday morning.

4        **THE COURT:**  No.  Okay.  So is that -- by answering --

5    does the government have any questions or observations you want

6    to make?

7        **MS. BADGER:**  Your Honor, the only thought that comes

8    to mind, Your Honor, it sounds like there's going to be an

9    evidentiary hearing so perhaps we ought to just open up

10   calendars and discuss dates if --

11       **THE COURT:**  Sure.

12       **MR. CHATTERJEE:**  I don't want to show a predisposition

13   to one side or the other.  We need to talk to our client.  We

14   need to absorb this.

15                      (Simultaneous colloquy.)

16       **THE COURT:**  I mean, I think -- I've just sort of said

17   the obvious, what any person would say.  Maybe not.  Anyway

18   I've given you some impressions of where I think dates are.

19   And go talk to your clients and see what you want to do.

20   Nothing is going to be held against them.  Having a hearing,

21   not having a hearing.  It's their right.

22       I mean, you sort of have -- I'm thinking you sort of have

23   to think about what we're -- I don't know what you think about.

24   I'm not a defense lawyer.  Okay.

25       **MS. BADGER:**  So perhaps we could be notified by

1    3:00 o'clock tomorrow?  Is that reasonable to notify the Court

2    and the government?

3         THE COURT:  The reason I think it is of some

4    significance is that -- and why it ought to be done tomorrow is

5    that there may be people who would be coming in for the

6    sentencing of your clients that, whoever they are --

7         MR. CHATTERJEE:  I think that's reasonable.  By

8    3:00 o'clock we'll confer with the government and let the Court

9    know.

10        THE COURT:  Is that okay, Mr. Lassart?

11        MR. LASSART:  Somewhere between 3:00 and 4:00 because

12   I have something going, Your Honor.

13        MR. FRENTZEN:  Your Honor, the only reason why I'm

14   hesitating is I know that -- you know, I'm putting something

15   together now for the Court in anticipation of Wednesday.  And

16   if we move forward and I know that Mr. Lassart filed something

17   that was in response to our memorandum just today, and I

18   haven't even had an opportunity to look at it.  So if there's

19   something in there that we need to address, I mean, if we don't

20   know, I guess we're just not going to know and we're going to

21   end up filing something perhaps unnecessarily.  And that's my

22   only issue.

23        THE COURT:  Well, I think that you prepare whatever

24   response you want to Mr. Lassart's memorandum.

25        MR. FRENTZEN:  My point was we don't want to respond

1  to anything if we don't have to.  But, you know --

2          THE COURT:  Well, eventually, I mean, won't I have to

3  deal with those issues anyway?

4          MR. FRENTZEN:  But if we're dealing with it through a

5  hearing, then it's a whole 'nother animal and we can just deal

6  with it then.  But, you know, we'll take a look and if we feel

7  like we need to hustle something up for the Court, we'll do it.

8  It's just -- it may be an unnecessarily jammed up more

9  paperwork, but, you know, we do a lot of unnecessary paperwork.

10  So...

11          THE COURT:  I don't actually have an answer.  There's

12  no reason why I can't go on Randy Jackson and Marlon Sullivan.

13          MR. HASIB:  I don't think there's any disputes.

14          THE COURT:  I look at those, and there's one dispute

15  as to a criminal history point or something.  But other than

16  that, I don't think it makes any difference.

17          MR. HASIB:  Those should be ready for Wednesday.

18          THE COURT:  Yeah.  So I'm going to sentence those two

19  individuals in any event.

20          MS. BADGER:  Okay.

21          THE COURT:  Well, thank you very much.

22              (Proceedings adjourned at 2:51 p.m.)

23

24

25

**CERTIFICATE OF REPORTER**

I, KELLY SHAINLINE, Court Reporter for the United States District Court, Northern District of California, hereby certify that the foregoing proceedings in CR 14-0196 CRB, United States of America v. Leland Yee and Keith Jackson, were reported by me, a shorthand reporter, and were thereafter transcribed under my direction into text; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.


_Kelly Shainline_

Kelly Shainline, Court Reporter

Wednesday, March 9, 2016